*Rydman Record Retrieval*

TEL: 210/477-1308   FAX: 210/477-1309

ROGELIO RODRIGUEZ
V.
JAMES ARTHUR LARSON

RECORDS REGARDING: ROGELIO RODRIGUEZ
FOR THE TIME PERIOD OF JANUARY 16, 2003 TO THE PRESENT

RECORD TYPE: MEDICAL & BILLING RECORDS

RECORDS FROM: JORGE TIJMES, M.D.
320 N. McColl Road, Suite A
McAllen, Texas   78501

DELIVER TO: Mr. Patrick R. Kasperitis
Dunn, Weathered, Coffey, Rivera, Kasperitis & Rodriguez
611 S. Upper Broadway
Corpus Christi, Texas   78401

Dallas  •  Austin  •  San Antonio

Web: rydmanrecordretrieval.com


EXHIBIT 5

Copied to Backlns 2/06

## Rydman Record Retrieval

# CERTIFICATION

RE:  Cause No. CA-13-04-137
Rogelio Rodriguez
v.
James Arthur Larson

In the United States District Court, Southern District of Texas, Brownsville Division

RECORDS PERTAINING TO:   **Rogelio Rodriguez**

Pursuant to Rule 30, Federal Rules of Civil Procedure, I, Christina Orosco, duly swear and hereby certify that:

· JORGE E. TIJMES was/were duly sworn, and the deposition transcript is a true record of the testimony given him/her as witness/custodian of records for JORGE TIJMES, M.D.;

*Tax Cost $344.30*

· the deposition transcript was submitted to said custodian of records on 12/08/04 for examination and signature, and was returned to the officer on that date, and any changes made by the witness are attached to the deposition transcript; and

· the original deposition and certificate, together with copies of all exhibits was delivered in accordance with Rule 31(b). A copy of this certificate has been delivered to all parties on December 9, 2004.

**THIS IS NOT AN INVOICE**                                         *Christina Orosco*

4211 Gardendale, Suite 104-A * San Antonio, TX 78229 * Tel: (210) 477-1308/Fax (210) 477-1309
Web: www.rydmanrecordretrieval.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

## SUBPOENA IN A CIVIL CASE

ROGELIO RODRIGUEZ

VS.   CASE NUMBER: CA-13-04-137

JAMES ARTHUR LARSON

TO:   JORGE TIJMES, M.D.
320 N. McColl Road, Suite A
McAllen, Texas 78501
(956) 687-2032

---

☒ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

☒ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below:

ANY AND ALL MEDICAL RECORDS, BILLING RECORDS, INSURANCE RECORDS, X-RAY REPORTS, OFFICE NOTES, REPORTS, ANY TYPE OF CORRESPONDENCE AND ANYTHING ELSE REDUCED TO WRITING PERTAINING TO ROGELIO RODRIGUEZ (FOR THE TIME PERIOD OF JANUARY 16, 2003 TO THE PRESENT), DATE OF BIRTH: 01/12/1960, SOCIAL SECURITY #: 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 INCLUDING RECORDS CONTAINED IN YOUR FILES FROM OTHER SOURCES

in the possession, custody or control of the said witness, and every such record to which the witness may have access.

---

| AT THE OFFICES OF | DATE AND TIME.   *INSTANTER* |
|---|---|
| JORGE TIJMES, M.D. | |
| 320 N. McColl Road, Suite A | |
| McAllen, Texas 78501 | |
| (956) 687-2032 | or an agreed time with RYDMAN RECORD RETRIEVAL, |
| (or at another agreed time & place) | or at their instruction if no agreement |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth for each person designated, the matters on which the person will testify Federal Rules of Civil Procedure, 30(b) (6).

---

ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   DATE November 10, 2004

*Randall P. Crane (signature)*    ATTORNEY FOR PLAINTIFF

ISSUING OFFICER NAME, ADDRESS AND PHONE NUMBER
Randall P. Crane
State Bar #: 05006900
RANDALL P. CRANE, ATTORNEY AT LAW
201 S. Sam Houston
San Benito, TX 78586
Phone: (956) 399-2496

## PROOF OF SERVICE

| SERVED | DATE:<br><br>November 10, 2004 | PLACE:<br><br>320 N. McColl Road, Suite A<br><br>McAllen, Texas 78501 |
|---|---|---|
| SERVED ON: *Linda de la Cruz*<br><br>Jorge Tijmes, M.D. | | MANNER OF SERVICE:<br><br>HAND SERVICE |
| SERVED BY:<br><br>*Jaime Zuniga* | | TITLE:<br><br>NOTARY PUBLIC |
| **DECLARATION OF SERVER** | | |

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on November 10, 2004

*[signature]*
SIGNATURE OF SERVER
4211 Gardendale, Suite 104-A, San Antonio, Texas 78229

---

**Rule 45, Federal Rules of Civil Procedure, Parts C & D**

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

3 (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that subject to the provisions of clause (c) (3) (b) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception of waiver applies or

(iv) subjects a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense or travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the document, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

**HIPAA COMPLIANCE**

The party seeking the healthcare information described above has provided written notice to the individual/patient by serving same upon such individual's attorney. The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court. The time for the individual to raise objections to the court will lapse on **12/02/04**. No objections have been filed to date. If a waiver to objections is obtained from the individual's attorney, you will be notified of same. If objections are filed by the individual's attorney, you will be immediately notified. The absence of any notification by the lapse date indicates that no objections were filed. A copy of the notice for issuance of this subpoena is attached as documentation.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ROGELIO RODRIGUEZ

VS.                                          CIVIL ACTION NO. CA-13-04-137

JAMES ARTHUR LARSON


DEPOSITION BY WRITTEN QUESTIONS PROPOUNDED
TO THE WITNESS:

JORGE TIJMES, M.D.
320 N. McColl Road, Suite A
McAllen, Texas 78501
(956) 687-2032

---

1. Please state your full name, business address, and official title.

    ANSWER: _Jorge E. Tijmes, 320 N. McColl Rd Ste A McAllen, Tx 78501, M.D._

2. Did you receive a subpoena for the production of records and other documents pertaining to ROGELIO RODRIGUEZ (FOR THE TIME PERIOD OF JANUARY 16, 2003 TO THE PRESENT)?

    ANSWER: _yes_

3. Has ROGELIO RODRIGUEZ (FOR THE TIME PERIOD OF JANUARY 16, 2003 TO THE PRESENT) been treated or examined by or received services from JORGE TIJMES, M.D.?

    ANSWER: _yes_

4. Has JORGE TIJMES, M.D. made or caused to be made any memorandum, report, record or data compilation, in any form, of the examination and/or treatment of said patient or regarding the services performed for ROGELIO RODRIGUEZ (FOR THE TIME PERIOD OF JANUARY 16, 2003 TO THE PRESENT)?

    ANSWER: _yes_

5. Are these memorandum, reports, records, or data compilations under your care, supervision, direction, custody and/or control?

ANSWER: yes

6. Were these memoranda, reports, records, or data compilations made or caused to be made by **JORGE TIJMES, M.D.**?

ANSWER: yes

7. Please state whether or not it was in the regular course of business of, for a person with knowledge of the acts, events, conditions, opinions, or diagnoses recorded to make the record or to transmit information thereof to be included in such record.

ANSWER: yes

8. Were the entries of these memoranda, reports, records, or data compilations made at or shortly after the time of the transaction recorded on these entries?

ANSWER: yes

9. Were these records made and kept in the regular course of business?

ANSWER: yes

10. Please attach exact duplicates of the <u>requested records</u> pertaining to **ROGELIO RODRIGUEZ (FOR THE TIME PERIOD OF JANUARY 16, 2003 TO THE PRESENT)** to this deposition OR hand exact duplicates of the <u>requested records</u> or the originals thereof for photocopying to the notary public taking your deposition for attachment to this deposition. Have you done as requested?

    If not, identify for the notary public the records and documents you did not produce and explain why you did not produce them.

ANSWER: yes

11. Please state the full amount of charges in the treatment of the patient, **ROGELIO RODRIGUEZ (FOR THE TIME PERIOD OF JANUARY 16, 2003 TO THE PRESENT)**.

ANSWER: $1550.00

12. Please state whether or not such charges are reasonable and necessary for like or similar services rendered in the vicinity in which they were incurred.

ANSWER: yes

13. Please state whether or not the charges are reasonable and the services performed were necessary for the proper care and treatment of **ROGELIO RODRIGUEZ (FOR THE TIME PERIOD OF JANUARY 16, 2003 TO THE PRESENT)**.

**ANSWER:** yes

14. Has the patient's attorney requested the preparation of a narrative report?

    If your answer to this question is, "Yes", and this report is **NOT** included in the documents produced, please explain why you did not produce the report.

**ANSWER:** no

15. Are you aware of any other hospital, clinic, sanitarium, physician, chiropractor, or osteopath, not mentioned in the records, that may have possession of records pertaining to the person subject to this deposition? If so, please state the name of such entity and describe briefly what records they possess.

**ANSWER:** Rio Grande Valley Imaging & Diagnostic Center

16. Have you been requested, directed, or has it ever been suggested by any person (whether doctor, lawyer, patient, or anyone else) that any part of the records subject to this deposition be withheld or protected from discovery for any reason? If so, please state the name and address of the person who conveyed this information to you and when such event occurred.

**ANSWER:** no

17. Do you have any reason to believe that the records subject to this deposition have been edited, purged, culled or in any other manner made different from the way such records existed when created? If so, please explain your knowledge or belief in the regard.

**ANSWER:** no

18. Are there any other locations where records or documents pertaining to **ROGELIO RODRIGUEZ (FOR THE TIME PERIOD OF JANUARY 16, 2003 TO THE PRESENT)** would be or may be kept by **JORGE TIJMES, M.D.?**

    If yes, please identify the name and address of that location if known.

**ANSWER:** no

19. In the event that no records can be found, or a portion of the records cannot be found, are there document archives (i.e. microfiche), document retention or destruction policies which explain their absence? If yes, please identify who has knowledge of those archives or policies for **JORGE TIJMES, M.D.**.

ANSWER: _all records provided_

_____
WITNESS, CUSTODIAN OF RECORDS

I, _Cynthia Marie Soto_, a Notary Public in and for the State of _Texas_ do hereby certify that the foregoing answers of the witness were made by the said witness and sworn to and subscribed before me. The records attached hereto are exact duplicates of the original records.

GIVEN UNDER MY HAND AND SEAL OF OFFICE on this the _8_ day of _December_, 20_04_.



CYNTHIA MARIE SOTO
Notary Public, State of Texas
My Commission Expires
April 16, 2006

Notary Public in and for The State of _Texas_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROGELIO RODRIGUEZ AND ELIZABETH RODRIGUEZ V. JAMES ARTHUR LARSON | § § § § § | CIVIL ACTION NO. B-04-137 |

### CROSS QUESTIONS TO BE PROPOUNDED TO CUSTODIAN(S) OF RECORDS FOR:

HERMAN J. KEILLOR, M.D.; JORGE TIJMES, M.D.;
D. S. GILL, M.D., FOCCUS MEDICINE CENTER;
D. S. GILL, M.D., OIS REHAB CENTER; and
ABRAHAM CANO, M.D.
(MEDICAL & BILLING RECORDS)

1. Has ROGELIO RODRIGUEZ received treatment or services from, or been examined by SEE LIST OF PROVIDERS prior to January 16, 2003?

ANSWER: Yes

2. Has SEE LIST OF PROVIDERS made or caused to be made any memorandum, report, or data compilation, *in any form*, of the examination and/or treatment of ROGELIO RODRIGUEZ or regarding the services performed for ROGELIO RODRIGUEZ prior to January 16, 2003?

ANSWER: Yes

3. Are these memorandum, reports, or data compilations under your care, supervision, direction, custody, and/or control?

ANSWER: Yes

4. Were these memoranda, reports, records, or data compilations made or caused to be made by SEE LIST OF PROVIDERS?

ANSWER: Yes

5. Please state whether or not it was in the regular course of business of SEE LIST OF PROVIDERS for a person with knowledge of the acts, events, conditions, opinions, or diagnoses recorded to make the record or to transmit information thereof to be included in such record.

ANSWER: Yes

-2-

6. Were the entries of these memoranda, reports, records, or data compilations made at or shortly after the time of the transaction recorded on these entries?

ANSWER: yes

7. Were these records made and kept in the regular course of business?

ANSWER: yes

8. Please attach exact duplicates of the requested records pertaining to ROGELIO RODRIGUEZ FOR THE TIME PERIOD PRIOR TO JANUARY 16, 2003, to this deposition or hand exact duplicates of the requested records or the originals thereof for photocopying to the notary public taking your deposition for attachment to this deposition. Have you done as requested? If not, identify for the notary public the records and documents you did not produce and explain why you did not produce them.

ANSWER: yes

9. Please state the full amount of charges in the treatment of the patient, ROGELIO RODRIGUEZ, for the time period prior to January 16, 2003.

ANSWER: $1550.00

10. Please describe in detail all medical training that qualifies you to determine whether medical treatment or services was necessary.

ANSWER: please see C.V. attached

11. Please describe in detail all medical training that qualifies you to determine whether the charges for medical treatment or services were reasonable.

ANSWER: please see C.V. attached

12. Please describe in detail your work history and training which makes you personally knowledgeable of the usual and ordinary charges for medical treatment in Nueces County, Texas.

ANSWER: please see C.V. attached

13. Are there any other locations where records or documents pertaining to ROGELIO RODRIGUEZ, for the time period prior to January 16, 2003, would be or may be kept by SEE LIST OF PROVIDERS? If yes, please identify the name and address of that location, if known.

ANSWER: no

-3-

14. In the event that no records can be found, or a portion of the records cannot be found, are there document archives (i.e. microfiche), document retention or destruction policies which explain their absence? If yes, please identify who has knowledge of those archives or policies for SEE LIST OF PROVIDERS.

ANSWER: _All records provided_

_____
WITNESS, CUSTODIAN OF RECORDS

I, _Cynthia Marie Soto_, a Notary Public in and for the state of Texas, do hereby certify that the foregoing answers of the witness were made by the said witness and sworn to and subscribed before me. The records attached hereto are exact duplicates of the original records.

GIVEN UNDER MY HAND AND SEAL OF OFFICE on this the _8_ day of _December_, 20_04_.

_____
NOTARY PUBLIC, STATE OF TEXAS

*Seal / Stamp*

CYNTHIA MARIE SOTO
Notary Public, State of Texas
My Commission Expires
April 16, 2008

# CURRICULUM VITAE

## JORGE E. TIJMES, M.D.

| | |
|---|---|
| **OFFICE ADDRESS:** | 320 N. McColl<br>McAllen, Texas 78501 |
| **MAILING ADDRESS:** | P.O. Box 6209<br>McAllen, Texas 78502 |
| **OFFICE PHONE:** | (956) 687-2032 |
| **OFFICE FAX:** | (956) 687-2761 |
| **PLACE OF BIRTH:** | Santiago De Chile, S.A. |
| **CITIZENSHIP:** | U.S. Citizen |

### EDUCATION

| | |
|---|---|
| **PRE-MEDICAL:** | University of Chile, Santiago de Chile, S.A. |
| **MEDICAL:** | University of Chile, Santiago de Chile, S.A. |
| **DEGREE:** | Medical Doctor |
| **DATE OF GRADUATION:** | May 8, 1968 |
| **INTERNSHIP:** | Postgraduate School of Medicine, University of Chile in Orthopaedic Surgery from July 1968 thru July 1970. |
| **HOSPITAL PRACTICE:** | Chief of Orthopaedic Section Regional Hospital, Puerto Montt, July 1970 through March 1973. |
| **RESIDENCY:** | Baylor College of Medicine in Orthopaedic Surgery Program, July 1973 to July 1977. |

| | |
|---|---|
| **PRIVATE PRACTICE:** | Affiliated to Del Oro Orthopaedics with Page Nelson, M.D. in Houston, Texas, July 1977 to February 1979. |
| | **SOLO PRACTICE:** South West Memorial Hospital, 7777 Southwest Freeway, #544 Houston, Texas 77074. |
| | Plainview, Texas, January 1, 1991 through March 31, 1991. In McAllen, Texas since July 8, 1991. |
| | **SOLO PRACTICE:** Southern Bone & Joint Center Associates, practice dedicated to spine injuries and general orthopaedics. |
| **FACULTY AT UNIVERSITIES:** | Clinical Instructor at Baylor College of Medicine; 1977 through 1983. |
| | Assistant Professor in orthopaedics at University of Concepcion, Chile, S.A.; 1989 and 1990; working at University of Concepcion-Chile-1989 and 1990. |
| **BOARD CERTIFICATIONS:** | American Board of Orthopaedic Surgery. |
| | American Board of Forensic Medicine. |
| | American Board of Independent Medical Examiners. |
| **MEDICAL SOCIETIES:**<br>*(Past and Present)* | Medical Society of Chile, 1968. |

2

|  |  |
|---|---|
|  | Chilean Orthopaedic Society; 1973, with thesis, The Operation of Girdlestone and its Biomechanics. |
|  | American College of Emergency Physicians, 1976. |
|  | Harris County Medical Society, 1976. |
|  | Latin American Orthopaedic Society *SLAOT*, 1978. |
|  | Southern Medical Association, 1984. |
|  | Southern Orthopaedic Association, 1984. |
|  | International College of Surgeons, 1981. |
|  | Fellow American Academy of Orthopaedics Surgery *AAOS*, 1994 |
|  | Texas Medical Association. |
|  | Texas Orthopaedic Association. |
|  | North American Spine Society. |
|  | Member American College of Forensic Examiners, 1998. |
|  | Member American College of Spine Surgery, 2000. |
| **PUBLICATIONS:** | *"Hip Dysplasia in the Province of Llanquihue"*, Journal of Pediatrics, September, 1972, Santiago de Chile. |

3

|  |  |
|---|---|
|  | *"Girdlestone Operations and its Biomechanics"*, Orthopaedic Journal, 1974, Santiago de Chile. |
|  | *"Arthroscopy in Acute Shoulder Dislocations"*, South Medical Journal, May 1979, J.E. Tijmes, M.D., H.S. Tullos, M.D., R. Lloyd, M.D. |
| **PAPER PRESENTATION:** | *"Comparative study of "Vibramicin" and other antibiotics in osteomyelitis"* read at Surgery Meeting in Cuyo, Argentina, July 1970. |
|  | *"Hip Dysplasia in the Province of Llanquihue"*, Surgical Pediatric Meeting in Punta Arenas, 1972. |
|  | *"Supracondylar Fractures"*, Panel at Baylor College of Medicine, 1976. |
|  | *"Spine Fractures and its Treatment"*, First Chilean-German Orthopaedic Meeting, 1978, Santiago de Chile, Chile. |
|  | *"Arthography in Acute Shoulder Dislocations"*, First Chilean-Spanish Orthopaedic Meeting, 1979, Vina Del Mar, Chile. |
|  | *"Use of External Fixators in Complicated Trauma of the Upper Extremity"*, Panel of Hand Surgery in XIV Surgical Meeting, 1981, Pucon, Chile. |

4

*"Cat scans in the Diagnosis of Lumbar Pathology"*, XII SLAOT Meeting, 1983, Chile.

*"Internal Fixation with Hip Compression Screw in Hip Fractures"*, First Chilean-Canadian Orthopaedic Meeting 1984, Vina Del Mar, Chile.

*"Lumbar Disc Herniation"* XIII Meeting of the Chilean Orthopaedic Society, November 1989.

| | |
|---|---|
| **EXAMINATIONS:** | ECFMG, 1972, #172 729 6 |
| | Texas State Medical Examination, 1975 E3784. |
| | American Board of Orthopaedic Surgery, 1979, OSAE; 1984 and 1987. |
| | American Board of Independent Medical Examiners (ABIME). |
| **SPECIALTY:** | Certificate of Postgraduate School, University of Chile, 1970. |
| **CERTIFICATE:** | Diplomate of American Board of Orthopaedic Surgery. |
| **HONORS:** | Houston Surgical Society Award, 1976. |

# Southern Bone & Joint Center Associates

**A PROFESSIONAL CORPORATION**

### Jorge E. Tijmes, M.D.
DIPLOMATE OF AMERICAN BOARD OF ORTHOPAEDIC SURGERY
FELLOW OF AMERICAN ACADEMY OF ORTHOPAEDIC SURGERY
MEMBER OF NORTH AMERICAN SPINE SOCIETY

P. O. Box 6209
McAllen, Texas 78502

Phone: (956) 687-2032
Fax: (956) 687-2761

February 24, 2004

Randall P. Crane, Attorney at Law
201 S. Sam Houston
San Benito, TX  78586

RE:                                    FINAL REPORT

| | |
|---|---|
| PATIENT: | Rogelio Rodriguez |
| CASE: | 12710 |
| D/BIRTH: | 01/12/1960 |
| SS#: | 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 |
| D/INJURY: | 01/16/2003 |

Dear Mr. Crane,

The patient is a 43-year-old male with complaints of neck pain, right shoulder pain, mid back and low back pain status post a motor vehicle collision on 01/16/2003. He reports being the restrained driver of a vehicle which hit another car. He reports that he was driving when the vehicle to his right tried to make a U-turn in front of him. Patient reports that he collided with the other vehicle since it invaded his right of way. Patient admits to head injury with windshield. He admits to blacking out for a few seconds. He was ambulatory at the scene. A police report was taken. He reports that he was taken via ambulance to Valley Baptist Emergency Room. Patient had x-rays and was diagnosed with rib fractures. He was later discharged in stable condition. He was then seen by his primary care physician who started a 4-6 week rehabilitation program. Patient later saw Dr. Gill who continued rehabilitation program and referred him for an MRI due to continued pain.

Currently, patient is with complaints of neck pain which he rates an 8/10 on the pain scale. He admits to pain to the right upper extremity and associated numbing and tingling sensations over the same distribution. He reports that he had mid back pain as well which is associated with increased muscle spasms. He is also referring pain to the lumbar spine which he rates an 8/10. He reports that the pain radiates to the right lower extremity and is associated with a tingling sensation over the same distribution. Patient reports that he has right shoulder pain which he rates a 7/10 on the pain scale. He reports that the pain is aggravated with overhead and lifting movements. He reports that he has rib pain which is aggravated with deep breathing. He denies any shortness of breath. He reports that he has difficulty sleeping secondary to pain and discomfort. He reports that he has been taking medications with only moderate relief of pain.

1

continued..................  2
RE:   Rogelio Rodriguez

PAST MEDICAL HISTORY:
Allergies: NKDA.
Medications: Darvocet, Diazepam, Vioxx.
Surgical History: Negative.
Social History: Patient denies the use of alcohol or tobacco. Patient is married with four children.

PHYSICAL EXAMINATION: Height: 5 feet, 9 inches. Weight: 218 lbs. HEAD: Normocephalic. EENT: Normal. NECK: Examination of the cervical spine reveals tenderness to palpation with paravertebral muscle spasms palpated bilaterally. Range of motion is decreased secondary to pain and discomfort. UPPER EXTREMITIES: Left shoulder, both elbows and both wrists are within normal limits. Examination of the right shoulder reveals tenderness to palpation along the anterior and lateral aspects. Range of motion is 0-100° abduction, 0-120° flexion. Internal rotation is decreased and with pain. Distal sensation and circulation are within normal limits. Deep tendon reflexes are normal, equal and reactive to bilateral upper extremities. Motor testing reveals 4/5 in strength to the right upper extremity as compared to the left which is 5/5. UPPER BACK: Examination of the thoracic spine reveals mild tenderness to palpation with mild paravertebral muscle spasms palpated bilaterally. Range of motion is adequate. LOW BACK: Examination of the lumbar spine reveals tenderness to palpation with paravertebral muscle spasms palpated bilaterally. Range of motion is 0-40° forward flexion. Straight leg raising is positive to the right at 70°, negative to the left. Distal sensation and circulation are within normal limits. Deep tendon reflexes are normal, equal and reactive to bilateral lower extremities. Motor testing reveals 4/5 in strength to the right lower extremity as compared to the left which is 5/5. Gait is guarded. LOWER EXTREMITIES. Both hips, both knees and both ankles are within normal limits. Distal sensation and circulation are normal. Reflexes are normal, equal and reactive. Muscle testing at extensor hallucis longus, anterior tibial, extensor hallucis communis, extensor digitorum communis, and gastrocnemius is normal.

X-rays of the cervical spine taken today in five different views reveals seven cervical vertebral bodies. Normal lordosis is noted. Intervertebral disc heights are preserved throughout the cervical spine. No foraminal encroachment is seen. No fractures, dislocations or subluxations are seen.

X-rays of the thoracic spine taken today in two different views reveals normal xyphosis. No fractures, dislocations or subluxations are seen.

X-rays of the lumbar spine taken today in five different views reveals five lumbar vertebral bodies. Normal spinal alignment noted. Intervertebral disc heights are preserved throughout the lumbar spine. Normal lumbar facets are seen. No osteoarthritic changes noted. No fractures, dislocations or subluxations seen.

X-rays of the right shoulder taken today in two different views reveals a type II acromion with local possible impingement. No fractures or dislocations are seen.

continued............... 3
RE:   Rogelio Rodriguez

DIAGNOSIS:    NECK PAIN
              LOW BACK PAIN
              RIGHT SHOULDER PAIN

PLAN: Patient is referred for an MRI of the cervical spine to better evaluate his pathology. He is prescribed Celebrex 200 mg. 1 po bid and Ultracet 37.5 mg. 1 po q 4-6 prn pain. He would benefit from pain clinic due to pain to the lumbar spine. He is advised to avoid any strenuous activity which may aggravate his pain. He is encouraged to perform walking activities and range of motion exercises daily as tolerated. He is to return in three weeks. He is to remain at work. Patient has been educated regarding his pathology.

DATE:  12/02/2003
Patient is seen for follow up. He is referring pain to the cervical spine. He reports that the pain is about a 7/10 on the pain scale. He reports that the pain does radiate intermittently to the right upper extremity. He reports that he continues with right shoulder pain as well. He reports that the pain is aggravated with overhead and lifting movements. He reports that in the past he had some injections with Dr. Gill which did not help to reduce his pain or discomfort. He reports that he is not interested in epidural steroid injections due to apprehension about needles. He reports that he did go for his MRI of the cervical spine and is here for results. He has taken medications with moderate relief of pain.

Examination of the cervical spine reveals tenderness to palpation with mild paravertebral muscle spasms palpated bilaterally. Range of motion is slightly decreased with discomfort noted. Examination of the right shoulder reveals tenderness to deep palpation along the anterior and lateral aspects. Range of motion is 0-100° abduction, 0-120° flexion. Internal rotation is decreased with discomfort. Examination of the lumbar spine reveals tenderness to palpation with paravertebral muscle spasms palpated bilaterally. Range of motion is 0-50° forward flexion. Straight leg raising is positive to the right at 70°, negative to the left. Distal sensation and circulation are within normal limits. Deep tendon reflexes are normal, equal and reactive to bilateral upper and lower extremities. Motor testing reveals 4/5 in strength to the right upper extremity as compared to the left which is 5/5, and 4/5 in strength to the right lower extremity as compared to the left which is 5/5. Gait is guarded.

MRI of the cervical spine done 11/13/2003 read by Dr. Berger reveals at C3-C4 through C6-C7, there are varying disc protrusions and effacements of the cerebrospinal fluid. There is subtotal opacification of the left maxillary antrum and moderate mucosal thickening of the base of the right maxillary antrum.

PLAN: Patient is to continue with medications in the form of Celebrex 200 mg. 1 po bid and Ultracet 37.5 mg. 1 po q 4-6 prn pain. He would benefit from pain clinic for lumbar spine pain but refuses this type of treatment at this time. He is advised to avoid any strenuous activity which may aggravate his pain. He is to return in six weeks. Patient has been educated regarding his pathology.

continued. . . . . . . . . . . . . . . . . 4
RE:   Rogelio Rodriguez

DATE:  02/24/2004
Patient is seen for follow up visit.   The patient is referring pain to his lumbar spine which he rates as moderate and constant radiating down to the right lower extremity where it is accompanied with tingling sensation all the way down to the calf area.  The patient states that the pain increases with sitting, standing or walking and even laying down.  In regards to the patient's cervical spine, he refers moderate pain which is intermittent in nature.  He is referring tingling sensation to the right forearm.  He is also referring tightness to his upper back which produces a generalized type of headache.  The patient states that the medications are do help to decrease his pain and discomfort and he is able to tolerate his activities of daily living.

PHYSICAL EXAM: Examination of the cervical spine reveals mild paravertebral muscle spasms palpated bilaterally.  Range of motion is within normal limits with discomfort noted on right rotation.  Examination of the lumbar spine reveals paravertebral muscle spasms palpated bilaterally.  There is mild tenderness to palpation.  Range of motion is 0-50° in forward flexion. Positive straight leg raising to the right at 80° and negative to the left.  Distal sensation and circulation are within normal limits.  Deep tendon reflexes are normal, equal and reactive to the bilateral upper and lower extremities.  Motor testing reveals a 5/5 in strength to the bilateral upper and lower extremities.  Patient has an antalgic gait.

PLAN: Patient to continue with medications in the form of Vioxx 25 mg. 1 po q day, Darvocet N100 1 po q 6-8 prn for pain and Soma 350 mg. 1 po q hs.  He would benefit from treatment at a pain clinic.  Patient is to follow up on prn basis. Patient has been educated regarding pathology.

CONCLUSION:  The patient will require treatment at a pain clinic and medications for the next twelve months at an average cost of $200.00 per month.

There is reasonable probability that these injuries were sustained secondary to the motor vehicle accident dated 01/16/2003.

If you have an questions regarding this patient's treatment or condition, please do not hesitate to contact our office at (956) 687-2032.

Sincerely yours,

Jorge E. Tijmes, M.D.

JET/mlp

4