Westlaw.

361 F.3d 875                                                                                      Page 1
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
(Cite as: 361 F.3d 875)

▷
Briefs and Other Related Documents

United States Court of Appeals,Fifth Circuit.
Perry HAMBURGER, Plaintiff-Appellant-Cross-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Defendant-Appellee-Cross-Appellant.
No. 02-21126.

March 2, 2004.

**Background:** Insured brought suit in state court against his
automobile insurer for breach of uninsured motorist (UIM)
clause, and for bad faith in denying his UIM claim. Follow-
ing removal, the United States District Court for the South-
ern District of Texas, Nancy K. Johnson, United States Ma-
gistrate Judge, granted insurer partial summary judgment on
insured's extra-contractual claims, struck insured's expert
witness's testimony on causation, entered judgment as a
matter of law that insured was not entitled to recover for
pain and suffering or medical expenses related to his herni-
ated disc, and offset jury verdict with benefits previously
paid to insured. Insured appealed.

**Holdings:** The Court of Appeals, Lynn, District Judge, sit-
ting by designation, held that:

3(1) insurer did not act in bad faith in denying payment of
UIM benefits prior to jury's determination of insured's dam-
ages;

7(2) district court did not abuse its discretion in granting in-
surer summary judgment on bad faith claim without first al-
lowing insured to depose insurer's representatives;

10(3) trial court did not abuse its discretion in barring in-
sured's treating physician's testimony on ground that insured
did not timely designate witness as expert;

16(4) insured was not required to present expert testimony
on causation in order to avoid judgment as a matter of law
on his claims for medical expenses and pain and suffering
related to herniated disc;

17(5) insured presented no evidence that his medical ex-

penses were reasonable; and

18(6) district court did not abuse its discretion in enforcing
pretrial order.

Affirmed in part, and reversed and remanded in part.

King, Chief Judge, concurred in part and dissented in part,
and filed opinion.

West Headnotes

[1] Insurance 217 ☞3335

217 Insurance
217XXVII Claims and Settlement Practices
217XXVII(C) Settlement Duties; Bad Faith
217k3334 In General
217k3335 k. In General. Most Cited Cases

Insurance 217 ☞3336

217 Insurance
217XXVII Claims and Settlement Practices
217XXVII(C) Settlement Duties; Bad Faith
217k3334 In General
217k3336 k. Reasonableness of Insurer's Conduct in Gener-
al. Most Cited Cases
To impose liability on insurer, under Texas law, for viola-
tions of duty of good faith and fair dealing, insured must
show that insurer knew or should have known that it was
reasonably clear that insured's claim was covered, but failed
to attempt in good faith to effectuate prompt, fair, and equit-
able settlement. V.A.T.S. Insurance Code, art. 21.21.

[2] Insurance 217 ☞2782

217 Insurance
217XXII Coverage--Automobile Insurance
217XXII(D) Uninsured or Underinsured Motorist Coverage
217k2781 Necessity of Tort Liability
217k2782 k. In General. Most Cited Cases
Texas courts construe phrase "legally entitled to recover" in
uninsured motorist (UIM) provisions to mean that insured
must establish uninsured motorist's fault and extent of res-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

361 F.3d 875                                                                                                    Page 2
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
**(Cite as: 361 F.3d 875)**

ulting damages before becoming entitled to recover bene-
fits; generally, establishment of insured's legal entitlement
requires settlement with tortfeasor or judicial determination
following trial on issue of tortfeasor's liability.

**[3] Insurance 217 ⬅3360**

217 Insurance
217XXVII Claims and Settlement Practices
217XXVII(C) Settlement Duties; Bad Faith
217k3358 Settlement by First-Party Insurer
217k3360 k. Duty to Settle or Pay. Most Cited Cases
Insurer did not act in bad faith, under Texas law, in denying
payment of uninsured motorist (UIM) benefits prior to jury's
determination of insured's damages caused by the other
driver; there was bona fide dispute about insurer's liability
for UIM benefits. V.A.T.S. Insurance Code, art. 21.21.

**[4] Insurance 217 ⬅3360**

217 Insurance
217XXVII Claims and Settlement Practices
217XXVII(C) Settlement Duties; Bad Faith
217k3358 Settlement by First-Party Insurer
217k3360 k. Duty to Settle or Pay. Most Cited Cases

**Insurance 217 ⬅3364**

217 Insurance
217XXVII Claims and Settlement Practices
217XXVII(C) Settlement Duties; Bad Faith
217k3358 Settlement by First-Party Insurer
217k3364 k. Duty To, and Effect On, Non-Parties in Gener-
al. Most Cited Cases
Under Texas law, insured does not have bad faith cause of
action against insurer for insurer's failure to attempt fair set-
tlement of uninsured motorist (UIM) claim after there is
judgment against insurer, at which time there are no longer
duties of good faith, and relationship becomes one of judg-
ment debtor and creditor. V.A.T.S. Insurance Code, art.
21.21.

**[5] Insurance 217 ⬅3335**

217 Insurance
217XXVII Claims and Settlement Practices

217XXVII(C) Settlement Duties; Bad Faith
217k3334 In General
217k3335 k. In General. Most Cited Cases
Under Texas law, insurer does not breach its duty of good
faith and fair dealing merely by erroneously denying a
claim.

**[6] Federal Civil Procedure 170A ⬅2553**

170A Federal Civil Procedure
170AXVII Judgment
170AXVII(C) Summary Judgment
170AXVII(C)3 Proceedings
170Ak2547 Hearing and Determination
170Ak2553 k. Time for Consideration of Motion. Most
Cited Cases
Ordinarily, where party opposing summary judgment in-
forms court that its diligent efforts to obtain evidence from
moving party have been unsuccessful, continuance for pur-
poses of discovery should be granted almost as a matter of
course, but if additional discovery will not likely generate
evidence germane to summary judgment motion, district
court may, in its discretion, proceed to rule on the motion
without further ado.

**[7] Federal Civil Procedure 170A ⬅2553**

170A Federal Civil Procedure
170AXVII Judgment
170AXVII(C) Summary Judgment
170AXVII(C)3 Proceedings
170Ak2547 Hearing and Determination
170Ak2553 k. Time for Consideration of Motion. Most
Cited Cases
District court did not abuse its discretion in granting insurer
summary judgment on bad faith claim without first allowing
insured to depose insurer's representatives to elicit evidence
that insurer had preliminarily determined that accident had
caused insured's herniated disc; this evidence could not have
disproved that bona fide dispute existed as to whether dif-
ference between medical bills and insurance benefits already
paid was sufficient compensation for insured's pain and suf-
fering.

**[8] Federal Civil Procedure 170A ⬅1275**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

361 F.3d 875                                                                                      Page 3
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
**(Cite as: 361 F.3d 875)**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1272 Scope
170Ak1275 k. Identity and Location of Witnesses and Others. Most Cited Cases
Any witness who is to give expert testimony at trial must be disclosed, not merely those experts who are retained or specially employed to provide expert testimony or whose duties as employees of the party regularly involve giving expert testimony. Fed.Rules Evid.Rule 26(a)(2)(A), 28 U.S.C.A.

**[9] Federal Civil Procedure 170A 1278**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases
Trial court's exercise of its discretion to exclude experts not properly designated is reviewed by considering: (1) explanation for failure to identify witness; (2) importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) availability of continuance to cure such prejudice. Fed.Rules Evid.Rule 26(a)(2)(A), 28 U.S.C.A.

**[10] Federal Civil Procedure 170A 1278**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(A) In General
170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases
Trial court did not abuse its discretion in barring insured's treating physician's testimony on causation on ground that insured did not timely designate witness as expert; insured did not explain why he failed to timely designate expert, and insurer did not have reason to know insured intended to call witness. Fed.Rules Evid.Rule 26(a)(2)(A), 28 U.S.C.A.

**[11] Federal Courts 170B 420**

170B Federal Courts
170BVI State Laws as Rules of Decision
170BVI(C) Application to Particular Matters

170Bk420 k. Judgments. Most Cited Cases
Question of whether evidence is sufficient for claim to be presented to jury is governed by federal standards.

**[12] Federal Civil Procedure 170A 2142.1**

170A Federal Civil Procedure
170AXV Trial
170AXV(F) Taking Case or Question from Jury
170AXV(F)2 Questions for Jury
170Ak2142 Weight and Sufficiency of Evidence
170Ak2142.1 k. In General. Most Cited Cases

**Federal Civil Procedure 170A 2608.1**

170A Federal Civil Procedure
170AXVII Judgment
170AXVII(E) Notwithstanding Verdict
170Ak2608 Evidence
170Ak2608.1 k. In General. Most Cited Cases
Judgment as a matter of law is appropriate where party has been fully heard on issue and there is no legally sufficient evidentiary basis for reasonable jury to find for party on that issue.

**[13] Federal Courts 170B 416**

170B Federal Courts
170BVI State Laws as Rules of Decision
170BVI(C) Application to Particular Matters
170Bk416 k. Evidence Law. Most Cited Cases
While federal court applies federal standards of review to assess sufficiency or insufficiency of evidence in relation to verdict, in doing so, court refers to state law for the kind of evidence that must be produced to support verdict.

**[14] Evidence 157 601(1)**

157 Evidence
157XIV Weight and Sufficiency
157k601 Particular Facts or Issues
157k601(1) k. In General. Most Cited Cases
Under Texas law, lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable layman to determine, with reasonable probability, causal relationship between the event and the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

361 F.3d 875                                                                                                    Page 4
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
(Cite as: 361 F.3d 875)

condition.

[15] Evidence 157 €==601(1)

157 Evidence
157XIV Weight and Sufficiency
157k601 Particular Facts or Issues
157k601(1) k. In General. Most Cited Cases
Generally, under Texas law, lay testimony establishing se-
quence of events which provides strong, logically traceable
connection between the event and the condition is sufficient
proof of causation; therefore, in determining whether lay
testimony is sufficient to prove causation, Texas courts look
at nature of the lay testimony and nature of the injury.

[16] Damages 115 €==208(2)

115 Damages
115X Proceedings for Assessment
115k208 Questions for Jury
115k208(2) k. Physical Suffering and Inconvenience Result-
ing from Injuries. Most Cited Cases

Damages 115 €==208(5)

115 Damages
115X Proceedings for Assessment
115k208 Questions for Jury
115k208(5) k. Expenses. Most Cited Cases
Under Texas law, insured was not required to present expert
testimony that his neck injury was caused by automobile ac-
cident, in order to avoid judgment as a matter of law on his
claims against uninsured motorist insurer for medical ex-
penses and pain and suffering related to herniated disc; in-
sured presented evidence of sequence of events from which
trier of fact could properly infer that accident caused in-
sured's injury.

[17] Damages 115 €==191

115 Damages
115IX Evidence
115k183 Weight and Sufficiency
115k191 k. Expenses. Most Cited Cases
Under Texas law, claim for past medical expenses must be
supported by evidence that such expenses were reasonable

and necessary; testimony showing only nature of injuries,
character of and need for services rendered, and amounts
charged therefor does not constitute evidence of probative
force that charges are reasonable.

[18] Federal Civil Procedure 170A €==1938.1

170A Federal Civil Procedure
170AXIV Pre-Trial Conference
170Ak1938 Effect
170Ak1938.1 k. In General. Most Cited Cases
District court did not abuse its discretion in enforcing pretri-
al order in which insured agreed that insurer was entitled to
offset jury verdict with benefits previously paid, despite in-
sured's unspoken assumption that jury would be allowed to
consider full range of his damages. Fed.Rules Civ.Proc.Rule
16, 28 U.S.C.A.

*877 Timothy W. Cerniglia (argued), Sharp, Henry,
Cerniglia, Colvin, Weaver & Hymel, New Orleans, LA,
Thomas Miles Farrell, Nickens, Keeton, Lawless, Farrell &
Flack, Houston, TX, for Hamburger.
Mary Elizabeth McCahill Taylor (argued), Taylor & Taylor,
Houston, TX, for State Farm Mut. Auto. Ins. Co.

Appeals from the United States District Court for the South-
ern District of Texas.

Before KING, Chief Judge, DENNIS, Circuit Judge, and
LYNN, District Judge.

> FN* District Judge for the Northern District of
> Texas, sitting by designation.

*878 LYNN, District Judge:
Perry Hamburger appeals the trial court's grant of partial
summary judgment on his extra-contractual claims, the
striking of his expert witness's testimony on causation, the
entry of judgment as a matter of law that Hamburger was
not entitled to recover for pain and suffering or medical ex-
penses related to his herniated disc, and the offset of the jury
verdict with the $35,000 in benefits previously paid to Ham-
burger. We affirm in part, and reverse and remand in part.

I. BACKGROUND

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

361 F.3d 875                                                                                     Page 5
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
(Cite as: 361 F.3d 875)

On July 26, 1999, Hamburger was involved in an auto-mobile accident caused by another driver. Thereafter, Hamburger suffered a herniated disc in his neck that required surgery. Hamburger contends that this injury was caused by the accident. The other driver's insurer, Old American Insurance Company ("Old American"), paid Hamburger $25,000, the limits of the other driver's policy. Thereafter, Hamburger filed a claim with his insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), for his damages which exceeded $25,000. State Farm paid Hamburger $10,000 under the personal injury protection ("PIP") provision of his policy, but denied payment under the uninsured/underinsured motorist ("UIM") provision.

> FN1. The PIP provision provides benefits because of bodily injury, resulting from a motor vehicle accident, sustained by a covered person. The benefits consist of reasonable and necessary medical and funeral expenses, loss of income, and reasonable expenses incurred for obtaining services that a covered person normally would have performed.

> FN2. The UIM provision pays damages that a covered person is legally entitled to recover from the owner or operator of an uninsured or under-insured motor vehicle because of bodily injury sustained by a covered person or property damage caused by an accident.

On July 24, 2001, Hamburger filed suit in state court against State Farm for breach of the UIM clause (the "contractual claim"), and for violations of the Deceptive Trade Practices Act and Article 21.21 of the Texas Insurance Code, relating to State Farm's alleged bad faith in denying his claim under the UIM provision (the "extra-contractual claims"). State Farm removed the case to federal court on September 7, 2001, based on diversity jurisdiction.

> FN3. United States District Court Judge Sim Lake presided over this case from the time of removal until May 21, 2002, when the parties consented to proceed before United States Magistrate Judge Nancy K. Johnson.

The trial court's Docket Control Order set a discovery dead-line of May 31, 2002. On March 15, 2002, State Farm moved for summary judgment on Hamburger's extra-contractual claims. Hamburger asked State Farm to provide dates for Hamburger to depose Matt Schomburg and Catherine Wesley, the State Farm representatives who handled State Farm's PIP and UIM claims. State Farm replied in an April 30, 2002 letter: "This is to inform you that State Farm will not agree to produce these representatives for deposition because there is no issue in this suit to which their testimony is relevant." On May 20, 2002, Hamburger moved to compel the depositions of the two State Farm representatives. On May 28, 2002, the trial court granted State Farm's motion for partial summary judgment, and Hamburger filed a motion to reconsider the partial grant of summary judgment. On June 12, 2002, the court conducted a hearing on Hamburger's motion to compel and his motion to reconsider, and denied both motions. Hamburger appeals the granting of partial summary judgment for State *879 Farm on Hamburger's extra-contractual claims.

Hamburger designated his expert witnesses on April 30, 2002, almost three months after the trial court's deadline, without submitting expert reports. On May 23, 2002, State Farm filed a motion to exclude Hamburger's expert witnesses for failure to timely designate the experts and produce expert reports. On June 12, 2002, the trial court granted State Farm's motion to exclude Hamburger's expert witnesses, and on August 23, 2002, the trial court denied Hamburger's motion to reconsider. Hamburger appeals the court decision to bar Dr. Lynn Fitzgerald's expert testimony that the accident caused Hamburger's herniated disc.

Because Hamburger had no expert testimony that the accident caused Hamburger's herniated disc, the trial court granted State Farm's motion for judgment as a matter of law that the accident did not cause Hamburger's injuries. Therefore, the trial court did not allow the jury to consider compensation for Hamburger's medical expenses or pain and suffering related to the herniated disc. The jury was allowed to consider compensation only for Hamburger's past and future pain and suffering related to injuries other than the herniated disc. As an alternative ground for granting judgment as a matter of law that Hamburger was not entitled to recover medical expenses, the trial court found that Hamburger had

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

361 F.3d 875
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
(Cite as: 361 F.3d 875)

presented no evidence that his medical expenses were reasonable. Hamburger appeals the trial court's grant of judgment as a matter of law.

The jury awarded Hamburger $50,000 for pain and suffering not related to his herniated disc, and on September 6, 2002, the trial court entered a final judgment against State Farm for $50,000. On September 13, 2002, State Farm moved to alter or amend the final judgment to offset the $10,000 in PIP benefits paid by State Farm, and the $25,000 in benefits paid by Old American. On September 30, 2002, the trial court granted State Farm's motion and entered an amended final judgment against State Farm in the amount of $15,000. Hamburger appeals the trial court's application of the offsets to the jury verdict.

## II. ANALYSIS

### A. Summary Judgment on the Extra-Contractual Claims

On May 28, 2002, the trial court granted State Farm's Motion for Partial Summary Judgment on Hamburger's claims that State Farm "failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear" in violation of the Deceptive Trade Practices Act and Article 21.21 of the Texas Insurance Code (the "extra-contractual claims"). Hamburger contends that summary judgment on the extra-contractual claims was improper because (1) material facts were in dispute which precluded summary judgment, and (2) Hamburger was not afforded a full opportunity to conduct discovery.

The Court reviews the trial court's grant of partial summary judgment de novo, applying the same summary judgment standard applied by the district court. Williams v. Brumer, 180 F.3d 699, 702 (5th Cir.1999). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In addition, the trial court's interpretations of state law are reviewed by this Court de novo. *880Salve Regina Coll. v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d

190 (1991).

[1] In order to impose liability on State Farm for violations of the duty of good faith and fair dealing, the DTPA, and Article 21.21, Hamburger was required to show that State Farm knew or should have known that it was reasonably clear that Hamburger's UIM claim was covered, but failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement. Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 55 (Tex.1997)(enunciating the standard for breach of the common law duty of good faith and fair dealing); Emmert v. Progressive County Mut. Ins. Co., 882 S.W.2d 32, 36 (Tex.App.-Tyler 1994, no writ) ("The various other extracontractual claims require the same predicate for recovery as bad faith causes of action.").

[2][3] Hamburger's UIM coverage requires State Farm to "pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person." Texas courts construe the phrase "legally entitled to recover" in UIM provisions to mean that "the insured must establish the uninsured motorist's fault and the extent of the resulting damages before becoming entitled to recover [UIM benefits]." Wellisch v. United Servs. Auto. Ass'n, 75 S.W.3d 53, 57 (Tex.App.-San Antonio 2002, pet. denied) (citing Henson v. S. Farm Bureau Cas. Ins. Co., 17 S.W.3d 652, 653 (Tex.2000); Franco v. Allstate Ins. Co., 505 S.W.2d 789, 792 (Tex.1974); Mid-Century Ins. Co. of Tex. v. Barclay, 880 S.W.2d 807, 811 (Tex.App.-Austin 1994, writ denied); Sikes v. Zuloaga, 830 S.W.2d 752, 753 (Tex.App.-Austin 1992, no writ)). Generally, establishment of an insured's legal entitlement requires "a settlement with the tortfeasor or a judicial determination following trial on the issue of the tortfeasor's liability." Id. Therefore, Hamburger was not "legally entitled to recover" from State Farm until the jury established the extent of Hamburger's damages caused by the tortfeasor, the other driver.

In Wellisch, in determining whether an insurer could be liable for violations of Article 21.55 by not paying a UIM claim before the insured's legal entitlement was established, the San Antonio Court of Appeals stated: "[A]n insurer has the right to withhold payment of UIM benefits until the insured's legal entitlement is established." Wellisch, 75

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

361 F.3d 875                                                                                                          Page 7
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
(Cite as: 361 F.3d 875)

S.W.3d at 57. State Farm argues from *Wellisch* that coverage of Hamburger's UIM claim was not reasonably clear until the jury determined the extent of Hamburger's damages caused by the other driver. State Farm thus contends that the trial court properly granted summary judgment on Hamburger's extra-contractual claims, because no bad faith liability could attach for State Farm's failure to settle the claim prior to the jury's determination of Hamburger's damages caused by the accident.

[4] There are no Texas cases which have squarely held that liability can never be reasonably clear before there is a court determination of proximately caused damages. On the other hand, in *Mid-Century Ins. Co. of Tex. v. Boyte,* the Texas Supreme Court held that an insured does not have a bad faith cause of action against an insurer for the insurer's failure to attempt a fair settlement of a UIM claim after there is a judgment against the insurer, at which time there are no longer duties of good faith and the relationship becomes one of judgment debtor and creditor. *Mid-Century Ins. Co. of Tex. v. Boyte,* 80 S.W.3d 546, 549 (Tex.2002). If State Farm's position were adopted, an insured such as Hamburger could never successfully assert a bad faith claim against his insurer for failing to attempt a fair settlement*881 of a UIM claim: pre-judgment, liability would not be reasonably clear under *Giles,* and post-judgment, such an action would be barred under *Boyte.* Absent a more clear indication from Texas courts that liability cannot be reasonably clear under *Giles* until the insured is found in a legal proceeding to be entitled to recover, we will not adopt this interpretation of Texas law.

[5] State Farm further argues that, even if extra-contractual bad faith claims are available for an insurer's conduct before the insured's legal entitlement to benefits is established in court, the record is devoid of any evidence that State Farm knew or should have known that it was reasonably clear that Hamburger's UIM claim was covered but failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement. *Giles,* 950 S.W.2d at 55. An insurer does not breach its duty of good faith and fair dealing merely by erroneously denying a claim. *United States Fire Ins. Co. v. Williams,* 955 S.W.2d 267, 268 (Tex.1997). "Evidence that only shows a bona fide dispute about the insurer's liability

on the contract does not rise to the level of bad faith." *Id.*

In this case, in seeking payment of UIM benefits, Hamburger submitted to State Farm medical bills totaling $18,960.90, and claimed additional damages for pain and suffering as to which he apparently submitted no additional information. State Farm responded:

The medical information that was submitted to us concerning Perry Hamburger does not appear to warrant an underinsured claim. This is based on Old American Insurance Company paying their policy limit of $25,000.00 and State Farm paying the policy limit under Personal Injury Protection of $10,000.00. We feel that $35,000.00 is adequate compensation for Mr. Hamburger's claim.

This letter reflects a bona fide dispute about State Farm's liability for UIM benefits. Although Hamburger contends that "such an outlandishly low evaluation, on its face, shows that State Farm's denial of Mr. Hamburger's claim was merely a pretext," we disagree. Even if State Farm assumed during its evaluation that the accident caused all of Hamburger's claims, it cannot constitute bad faith *per se* for State Farm at that time to view $16,039.10, which is the difference between the medical bills and the insurance benefits already paid, as sufficient compensation for Hamburger's subjective pain and suffering. Therefore, the trial court properly granted summary judgment for State Farm on Hamburger's extra-contractual claims.

[6] Hamburger further argues that it was improper for the trial court to grant summary judgment on Hamburger's extra-contractual claims without first allowing Hamburger to depose the State Farm representatives who handled Hamburger's PIP and UIM claims. Ordinarily, "[w]here the party opposing summary judgment informs the court that its diligent efforts to obtain evidence from the moving party have been unsuccessful, 'a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.' " *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1267 (5th Cir.1991) (quoting *Sames v. Gable,* 732 F.2d 49, 51 (3d Cir.1984)). However, "[i]f the additional discovery will not likely generate evidence germane to the summary judgment motion, the district court may, in its discretion, proceed to rule on the motion without further ado." *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

361 F.3d 875                                                                                                     Page 8
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
(Cite as: 361 F.3d 875)

[7] Hamburger contends that the additional discovery he sought would have elicited testimony from State Farm's claims representatives that, when State Farm approved the payment of $10,000 in PIP benefits, State Farm determined that *882 Hamburger's medical bills resulted from the auto accident. In support, Hamburger quotes selected portions of the trial testimony of claims representative Matt Schomburg. However, the alleged link between the determination of PIP benefits and the determination that Hamburger's herniated disc was caused by the accident is unsupported by Schomburg's testimony, which was that payment of PIP benefits did not involve more than a rudimentary determination of causation. Further, even if Schomburg's testimony could be characterized as evidence that State Farm had preliminarily determined that the accident caused Hamburger's herniated disc, this evidence could not have disproved that a bona fide dispute existed about whether $16,039.10 was sufficient compensation for Hamburger's pain and suffering. Therefore, the requested additional discovery would not have generated evidence material to the summary judgment motion. The trial court did not abuse its discretion in granting summary judgment without first allowing Hamburger to depose the State Farm representatives.

### B. Disallowance of Dr. Fitzgerald's Expert Testimony on Causation

Hamburger asserts two alternative reasons for his claim that the trial court abused its discretion in barring Dr. Fitzgerald's expert testimony on causation. First, Hamburger asserts that Dr. Fitzgerald was not an expert from whom an expert report was required under Federal Rule of Civil Procedure 26(a)(2)(B), and therefore, he did not violate the trial court's discovery order by not treating her as such an expert. Alternatively, Hamburger asserts that even if an expert report of Dr. Fitzgerald was required, the trial court should have granted a continuance rather than barring Dr. Fitzgerald's expert testimony on causation.

Federal Rule of Civil Procedure 26(a)(2)(A) states that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Federal Rule of Civil Procedure 26(a)(2)(B) provides that "this disclosure shall, with respect to a witness who is re-

tained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness." The Advisory Committee Notes accompanying the 1993 Amendments explain the interaction of subparts (A) and (B) as follows:

The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.

[8] The trial court's Scheduling Order required Hamburger to designate his experts by February 1, 2002, but Hamburger did not designate Dr. Fitzgerald as an expert until April 30, 2002. Unlike the expert report requirement of Rule 26(a)(2)(B), the expert designation requirement of Rule 26(a)(2)(A) applies to all testifying experts. Therefore, if the trial *883 court had the discretion to bar Dr. Fitzgerald as an expert witness based solely on Hamburger's untimely designation of Dr. Fitzgerald as an expert, the Court need not reach the issue of whether Dr. Fitzgerald is an expert from whom an expert report is required by Rule 26(a)(2)(B).

FN4. Rule 26(a)(2)(A)'s disclosure requirement applies to "any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence," not merely to those experts who are retained or specially employed to provide expert testimony in the case or whose duties as employees of the party regularly involve giving expert testimony. *Musser v. Gentiva Health Servs., 356 F.3d 751, 756-57 (7th Cir.2004).* By distinguishing between the identification of an expert whose opinions may be presented at trial, and the requirement of an expert report, Rule 26(b)(4)(A) reiterates that Rule 26(a)(2)(A) applies to all testifying experts: "A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B),

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

361 F.3d 875                                                                                                    Page 9
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
(Cite as: 361 F.3d 875)

the deposition shall not be conducted until after the report is provided."

[9][10] The Court reviews the trial court's exercise of its discretion to exclude experts not properly designated by considering four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Geiserman v. MacDonald, 893 F.2d 787, 791 (5th Cir.1990).* Hamburger first explains that he failed to timely designate Dr. Fitzgerald because his "counsel did not believe that a treating physician was the type of witness from whom an expert report was necessary." While this explanation addresses why Hamburger did not obtain and serve a written report from Dr. Fitzgerald pursuant to Rule 26(a)(2)(B), it does not address why Hamburger failed to timely designate Dr. Fitzgerald as a testifying expert under Rule 26(a)(2)(A), and no other explanation is given.

The second factor, the importance of Dr. Fitzgerald's expert testimony on causation, is disputed. The trial court found, as State Farm contended, that without expert testimony on causation, State Farm was entitled to judgment as a matter of law on Hamburger's claims for pain and suffering and medical expenses related to his herniated disc. Hamburger contends that lay testimony would have been sufficient on causation. For purposes of this analysis, this Court assumes *arguendo* that Dr. Fitzgerald's testimony was essential to Hamburger's claims for medical expenses and pain and suffering for the herniated disc. Although the importance of Dr. Fitzgerald's proposed testimony weighs against exclusion of that testimony, the importance of proposed testimony cannot "singularly override the enforcement of local rules and scheduling orders." *Id.* at 792. Additionally, the importance of the testimony underscores how critical it was for Hamburger to have timely designated Dr. Fitzgerald.

The third factor, prejudice to State Farm, weighs in State Farm's favor. Since Dr. Fitzgerald was not designated timely, State Farm did not have reason to know that Hamburger intended to call her to give expert testimony about causation. Although State Farm was in possession of Dr. Fitzgerald's medical records prior to Hamburger's late designation of Dr. Fitzgerald as an expert witness, those records

did not address causation and thus did not alert State Farm that Dr. Fitzgerald might give expert testimony about that subject. Thus, State Farm would have been prejudiced if Dr. Fitzgerald's lately identified expert testimony about causation had been allowed.

The fourth factor relates to whether a continuance may have cured such prejudice by allowing State Farm time to depose Dr. Fitzgerald. Obviously, a continuance "would have resulted in additional delay and increased the expense of defending the lawsuit." *Geiserman, 893 F.2d at 792.*

Since the first and third factors militate against permitting the testimony, the trial **\*884** court was not obligated to continue the trial. Otherwise, the failure to satisfy the rules would never result in exclusion, but only in a continuance. Because of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance. Here, the trial court did not abuse its discretion in barring Dr. Fitzgerald as an expert witness because Hamburger failed to timely identify her as required by Rule 26(a)(2)(A).

> FN5. In light of our remand of this case on the issue of causation, the trial court may choose in its discretion to permit this testimony on retrial.

*C. Judgment as a Matter of Law on Hamburger's Claims for Medical Expenses and Pain and Suffering Related to his Herniated Disc*

[11][12][13] We review the trial court's grant of a motion for judgment as a matter of law *de novo. Hidden Oaks Ltd. v. City of Austin, 138 F.3d 1036, 1042 (5th Cir.1998).* The question of whether the evidence is sufficient for a claim to be presented to the jury is governed by federal standards. *Mathis v. Exxon Corp., 302 F.3d 448, 453 (5th Cir.2002).* Under federal standards, a judgment as a matter of law is appropriate where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." *Id.* "[W]e apply federal standards of review to assess 'the sufficiency or insufficiency of the evidence in relation to the verdict,' but in doing so we refer to state law for 'the kind of evidence that must be produced to support a verdict.' " *Ayres v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

361 F.3d 875                                                                                     **Page 10**
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
**(Cite as: 361 F.3d 875)**

_Sears, Roebuck & Co., 789 F.2d 1173, 1175 (5th Cir.1986)_(quoting _Fairley v. Am. Hoist & Derrick Co., 640 F.2d 679, 681 (5th Cir.1981)_ and _McCandless v. Beech Aircraft Corp., 779 F.2d 220, 223 (5th Cir.1985)_). For example, in _Ayres,_ we looked at Texas products liability law to determine that proof of a product defect and of the causative element could be established by direct or circumstantial evidence based on anecdotal or expert testimony. _Ayres, 789 F.2d at 1175._ Similarly, in _Geiserman,_ we looked at Texas law on legal malpractice to determine whether expert testimony is necessary to establish the standard of care. _Geiserman, 893 F.2d at 793._ Therefore, in this case, we will look to Texas law to determine whether Hamburger was required to present expert testimony on causation in order to avoid judgment as a matter of law.

[14][15] Under Texas law, "[l]ay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." _Morgan v. Compugraphic Corp., 675 S.W.2d 729, 733 (Tex.1984)._ "Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." _Id._ Therefore, in determining whether lay testimony is sufficient to prove causation, Texas courts look at the nature of the lay testimony and the nature of the injury.

In _Morgan,_ the plaintiff suffered from frequent skin rashes and problems with her digestive and nervous systems, which she alleged were caused by her exposure to chemical fumes from a leaking typesetting machine at her workplace. _Id._ at 731. The plaintiff testified that (1) she had always been in good health prior to the installation of the typesetting machine near her desk, (2) she worked with her face two inches from a typesetting machine that was leaking chemical fumes, (3) soon *885 thereafter she experienced problems with breathing and swelling, and (4) after four or five days of constant exposure, she experienced watery eyes, blurred vision, headaches, and swollen breathing passages. _Id._ at 733. The Texas Supreme Court held that this evidence established "a sequence of events from which the trier of fact may properly infer, without the aid of expert

medical testimony, that the release of chemical fumes from the typesetting machine caused [the plaintiff] to suffer injury." _Id._

Similarly, in _Blankenship v. Mirick,_ the plaintiff suffered from dislocated kneecaps, which she alleged were caused by an automobile collision. _Blankenship v. Mirick, 984 S.W.2d 771, 776 (Tex.App.-Waco 1999, pet. denied)._ The plaintiff testified that (1) she had experienced no problems with her knees before the collision, (2) the force of the collision caused her knees to be shoved into the dashboard, (3) she followed her doctor's instructions concerning daily exercises, avoidance of certain activities, and medication, and (4) she continued to experience pain between the time her doctor released her to work after the auto collision and the time her doctor concluded, nine months later, that her kneecaps were dislocated. _Id._ The court held the plaintiff's testimony was sufficient to prove causation. _Id._

Further, in _Dawson v. Briggs,_ the plaintiff suffered from pain, swelling, and popping in her jaw, which she alleged was caused by an automobile accident. _Dawson v. Briggs, 107 S.W.3d 739, 754 (Tex.App.-Fort Worth 2003, no pet.)._ The plaintiff testified that (1) prior to the accident, she did not wear a bite splint, (2) she had pain, swelling, and popping in her jaw as a result of the accident, (3) her dentist treated her for this problem and continued to do so, and (4) she was required to wear a bite splint or her jaw hurt and popped. _Id._ Although the court found that there was also expert testimony of causation, the court held that the plaintiff's lay testimony was sufficient proof of causation. _Id._

Finally, in _Fidelity & Guaranty Ins. Underwriters, Inc. v. La Rochelle,_ the plaintiff contended that her back injury was covered by worker's compensation because it resulted from her playing a ping pong game at work. _Fidelity & Guaranty Ins. Underwriters, Inc. v. La Rochelle, 587 S.W.2d 493, 494 (Tex.App.-Dallas 1979, writ dism'd)._ Nine months prior to playing ping pong, she had injured her back while working for a different employer and was diagnosed with a protruding disc. _Id._ Shortly after the ping pong game, she experienced pain in her lower back and was again treated for a disc condition. _Id._ The court concluded that expert testimony was not required because "the jury should be entitled to decide causation with or without medical testimony in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

361 F.3d 875                                                                                                     Page 11
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
(Cite as: 361 F.3d 875)

areas of common experience." *Id.* at 496.

In cases involving other types of injuries, Texas courts have refused to find lay testimony sufficient to prove causation. For example, in *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995), the Texas Supreme Court stated that "[t]he nature of a frostbite injury is such that expert medical testimony is required to establish causation." *See also Smith v. Southwestern Bell Tel. Co.,* 101 S.W.3d 698, 702 (Tex.App.-Fort Worth 2003, no pet.) (fibromyalgia); *Coastal Tankships, U.S.A., Inc. v. Anderson,* 87 S.W.3d 591, 603 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (bronchiolitis obliterans organizing pneumonia).

[16] Hamburger testified that (1) prior to the accident, he had never had any problems with his neck, (2) during the collision, his head went forward and snapped back against the headrest, (3) immediately after the collision, his neck felt stiff, and (4) over the next few months, the **886** pain progressively worsened and began to spread to his shoulder and arm. Hamburger presented evidence of a sequence of events from which the trier of fact could properly infer that the auto accident caused Hamburger's injury. Further, Hamburger's neck injury is more similar to a back injury or dislocated knees, such as those involved in *Blankenship* and *La Rochelle,* than it is to frostbite, such as that involved in *Crye,* and thus expert testimony was not required to establish that Hamburger's disc injury arose from the accident. Therefore, under Texas law, Hamburger was not required to present expert testimony on causation in order to avoid judgment as a matter of law on Hamburger's claims for medical expenses and pain and suffering related to the herniated disc.

[17] In granting judgment as a matter of law to State Farm on Hamburger's claim for medical expenses, the trial court additionally based its ruling on Hamburger's failure to present evidence that his medical expenses were reasonable. Under Texas law, a claim for past medical expenses must be supported by evidence that such expenses were reasonable and necessary. *Six Flags Over Texas, Inc. v. Parker,* 759 S.W.2d 758, 760-61 (Tex.App.-Fort Worth 1988, no writ); *Monsanto Co. v. Johnson,* 675 S.W.2d 305, 312 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.).

[t]estimony showing only the nature of the injuries, the character of and need for the services rendered, and the amounts charged therefor does not constitute evidence of probative force that the charges are reasonable." *Dallas Ry. & Terminal Co. v. Gossett,* 156 Tex. 252, 294 S.W.2d 377, 383 (1956). Hamburger presented no evidence that his medical expenses were reasonable. Therefore, the trial court correctly granted judgment as a matter of law to State Farm on Hamburger's claim for medical expenses.

> FN6. We note that Hamburger was on notice of the need to present evidence that his medical expenses were reasonable and necessary. In the August 28, 2002 pretrial hearing, State Farm's counsel argued that Hamburger should not be allowed to submit evidence of medical expenses to the jury: "[Y]ou need to have evidence of reasonableness, necessity and that they were made necessary because of the accident in question. Plaintiffs cannot meet that burden ..." The trial court responded: "Well, that may be the subject of a Rule 50 Motion. But, I mean, pretrial, I'm not going to do it."

Because the trial court correctly granted judgment as a matter of law to State Farm on Hamburger's claim for medical expenses, we affirm the trial court's judgment as a matter of law that Hamburger cannot recover his medical expenses. However, because Hamburger was not required to present expert testimony to create a fact issue on causation, we reverse the trial court's judgment as a matter of law that Hamburger cannot recover for pain and suffering related to the herniated disc.

### D. State Farm's Entitlement to Offsets

Hamburger contends that State Farm is not entitled to offset the jury verdict with the $10,000 paid for in PIP benefits and the $25,000 paid by Old American. Hamburger argues that the $10,000 in PIP benefits were paid to compensate Hamburger for his medical expenses related to his herniated disc. Because the trial court granted State Farm judgment as a matter of law on Hamburger's claim for medical expenses, the jury verdict did not include any compensation for Hamburger's medical expenses. Therefore, Hamburger contends that State Farm is not entitled to offset the jury verdict with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

361 F.3d 875                                                                                        Page 12
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
(Cite as: 361 F.3d 875)

the $10,000 in PIP benefits. Hamburger similarly argues that the $25,000 paid by Old American compensated Hamburger for damages related to his herniated disc. Since the *887 jury was only allowed to award damages for pain and suffering unrelated to the herniated disc, Hamburger contends that State Farm is not entitled to offset the jury verdict with the $25,000 paid by Old American. In light of our affirmance of the trial court's ruling that State Farm is entitled to judgment as a matter of law on Hamburger's claim for medical expenses, Hamburger's argument against the offsets must be addressed.

[18] State Farm contends that the joint pretrial order entered under Federal Rule of Civil Procedure 16(e) controls the subsequent course of the action. In the joint pre-trial order signed by Hamburger and State Farm, Hamburger agreed that "Defendant is entitled to offset any payments made pursuant to the underlying liability policy" and that "Defendant is entitled to offset any payments made under Plaintiff's PIP coverage unless Plaintiff's damages exceed the combined limits of his PIP and UIM coverage." Notably, the pretrial order did not condition these offsets on the jury's awarding damages for medical expenses.

> FN7. The pretrial order contained in the record is not signed by United States Magistrate Judge Johnson. State Farm contends that the order was entered by Judge Johnson at the pretrial conference on June 12, 2002, and Hamburger does not contest this contention. Further, at trial, Hamburger expressly relied on the facts stipulated by the parties in the order, treating it as in effect. Therefore, we assume the order was entered by the trial court.

Rule 16(e) states that a pretrial order "shall control the subsequent course of the action unless modified by a subsequent order." Because of the importance of pretrial orders in "achieving efficacy and expeditiousness upon trial in the district court, appellate courts are hesitant to interfere with the court's discretion in creating, enforcing, and modifying such orders." Quick Techs. v. Sage Group PLC, 313 F.3d 338, 345 (5th Cir.2002). Hamburger argues that enforcing the pretrial order in this case would be unjust because the context of the pretrial order "clearly reveals that any stipulation regarding offsets was made on the assumption that

Hamburger's jury would be allowed to consider the full range of his damages." We will not reverse the trial court's exercise of its discretion based on Hamburger's unspoken assumption. Hamburger should not have been surprised by the possibility that if he did not prove that his medical expenses were reasonable and necessary, the jury would not be permitted to consider an award of medical expenses. In fact, in the same pretrial order, State Farm set out its contention that "there is no evidence Plaintiff's injuries or medical conditions were caused by this accident, nor that the services and charges he incurred were reasonable and necessary." Therefore, enforcing the pretrial order in this case was not unjust and the trial court did not abuse its discretion in doing so.

### III. CONCLUSION

We affirm the trial court's grant of partial summary judgment on Hamburger's extra-contractual claims, the striking of Dr. Fitzgerald's expert testimony on causation, the entry of judgment as a matter of law that Hamburger was not entitled to recover medical expenses related to his herniated disc, and the offset of the jury verdict with the $35,000 in benefits previously paid to Hamburger. We reverse the trial court's entry of judgment as a matter of law that the accident did not cause Hamburger's herniated disc and remand the case so that the trier of fact can determine whether the accident caused Hamburger's herniated disc and, if so, to what extent Hamburger is entitled to recover for pain and suffering related to that injury.

*888 KING, Chief Judge, concurring in part and dissenting in part:

I agree with the majority, for the reasons stated in Judge Lynn's careful opinion, that the trial court was correct to grant partial summary judgment on Hamburger's extra-contractual claims, exclude Dr. Fitzgerald's expert testimony on causation, grant judgment as a matter of law on Hamburger's claim for medical expenses related to the herniated disc, and offset the jury verdict with funds already paid to Hamburger. Because I believe that lay testimony was insufficient under Texas law to establish causation in this case, I would also affirm the trial court's entry of judgment as a matter of law on the issue of the cause of Hamburger's herniated disc. The majority sets out the proper governing prin-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

361 F.3d 875                                                                                        Page 13
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
(Cite as: 361 F.3d 875)

ciples concerning whether lay testimony was required, but I would simply reach a different conclusion on this record. For that reason, I respectfully dissent from that portion of the majority's opinion and judgment.

As the majority correctly explains, the leading Texas authority on this question is *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729 (Tex.1984). There, the Texas Supreme Court stated the following rule regarding when expert testimony on causation is required:
Lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition. Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation.

*Id.* at 733 (citation omitted).

> FN1. I treat the question whether an expert is needed in this diversity case as a question governed by state law. I recognize that the distinction drawn in our cases between the *amount* of evidence required, which is a function of federal law under Federal Rule of Civil Procedure 50, and the *kind* of evidence required, for which we look to state law, becomes rather slippery in this context. Nonetheless, I agree with the majority that our cases treat this question as a matter of state law. From the point of view of the *Erie* interest in avoiding forum shopping, it is sensible to follow the state rules regarding when expert testimony is needed to prove causation.

The application of this rule is necessarily case-specific. There will be some cases in which the causal connection between an event and an injury is so plain that no fair-minded observer could reject it, but in other cases the causal connection is so attenuated that the layperson can only engage in rank speculation as to whether any connection exists. Some Texas cases suggest that certain types of injuries may be, as a categorical matter, beyond the ken of the layperson. *See, e.g., Burroughs Wellcome Co. v. Crye,* 907

S.W.2d 497, 499 (Tex.1995) ("The nature of a frostbite injury is such that expert medical testimony is required to establish causation."). In most cases, however, the decision turns not only on the type of injury but also on the surrounding circumstances. Thus, some cases involving herniated discs will not require expert testimony on causation, *see, e.g., Fid. & Guar. Ins. Underwriters, Inc. v. La Rochelle,* 587 S.W.2d 493, 494, 496-97 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.) (protruding disc in plaintiff's back), but other cases involving similar injuries will require an expert opinion, depending on whether (according to the facts of the case) "general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Morgan,* 675 S.W.2d at 733.

I find some of the details in the record before us quite relevant to the question **\*889** whether "general experience and common sense" will suffice in this case. Hamburger testified, and his wife agreed, that he never had any problems with his neck before the July 26 accident. Immediately after the accident, he experienced "general stiffness and some pain" in his neck, but he did not seek any medical treatment at that time. The pain continued and grew quantitatively worse over the next several weeks, but at some point between four and eight weeks after the accident the pain also changed qualitatively: "[A]ll of a sudden one day," Hamburger testified, "the pain just progressed from my neck and-to the shoulder and down my arm." It was this new species of pain that led him to the doctor in early November. It was later determined that his nerves were being compressed by a herniated disc.

The tests performed on Hamburger revealed not only the herniated disc but also some degenerative changes in his neck and spine. Although there was no testimony on whether Hamburger's accident caused his herniated disc (the operating surgeon would have opined that there was a connection, if the court had permitted it), there was expert testimony on the types of things that *can* cause a herniated disc. According to the testimony, it could be associated with degenerative conditions or with trauma. The category of trauma includes car accidents, but, according to the expert testimony, it also includes exercising and even sneezing-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

361 F.3d 875                                                                                                      Page 14
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
**(Cite as: 361 F.3d 875)**

anything that "[c]auses the body to jerk in any direction suddenly." The record in this case thus discloses both a delayed onset and possible competing causes, features that tend to erode the common sense causal connection between Hamburger's accident and his herniated disc. *See, e.g., Ill. Employers Ins. of Wausau v. Wilson,* 620 S.W.2d 169, 172 (Tex.Civ.App.-Tyler 1981, writ ref'd n.r.e.) (holding that the length of time between the plaintiff's shin laceration and the subsequent gangrene and amputation, together with the complexity of the injury, required expert testimony on causation); *Orkin Exterminating Co. v. Davis,* 620 S.W.2d 734, 736-37 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.) (requiring expert testimony where the plaintiff's nerve injuries to his neck and back might have been caused by an improper neck brace or congenital abnormalities).

To be sure, the factors just listed are in no way determinative. There are cases from the Texas appellate courts that do not require expert testimony even when these types of confounding factors are apparently present. In particular, the case of *Blankenship v. Mirick,* 984 S.W.2d 771 (Tex.App.-Waco 1999, pet. denied), cited by the majority, is in many ways quite similar to today's case. The plaintiff in that case received medical treatment immediately after her car accident for lacerations and abrasions to her knees, but x-rays were initially normal. *Id.* at 773. Only many months later did x-rays reveal laterally shifted kneecaps that eventually required surgery. *Id.* at 773-74. There was a suggestion in that case, based on testimony from the treating physician, that some people have a congenital susceptibility to patellar dislocations. *Id.* at 776. The physician was unable to say with any degree of confidence whether the plaintiff's dislocated kneecaps were caused by the accident or by a previously undetected preexisting condition. *Id.*

*Blankenship* is a persuasive guidepost, but I believe that it is subtly different from today's case in ways that bear on the need for expert testimony. First, while the physician in *Blankenship* testified that a preexisting condition could cause knee problems of the sort the plaintiff suffered, he did not testify that the plaintiff actually had any such condition. Here, in contrast, Hamburger actually did have signs of degenerative changes, though admittedly **\*890** they were deemed "not dramatic." The Texas courts frequently require

expert testimony when there are competing causes. *See Lenger v. Physician's Gen. Hosp., Inc.,* 455 S.W.2d 703, 707-08 (Tex.1970); *Coastal Tankships, U.S.A., Inc. v. Anderson,* 87 S.W.3d 591, 603-04 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). Nonetheless, even in the presence of competing causes, lay jurors are still permitted to reach their own conclusions as to causation in cases where there is a close relationship between an accident and an injury-when, in *Morgan*'s language, there is "a sequence of events which provides a strong, logically traceable connection between the event and the condition." 675 S.W.2d at 733. If Hamburger had experienced pain in his extremities and been diagnosed with a herniated disc shortly after the accident, I think that a juror's common sense could properly attribute the injury to the accident rather than to background causes. But the connection between the accident and the injury is more attenuated on this record, since Hamburger's symptoms changed after one to two months from "general stiffness and some pain" to severe pain shooting down to his arm.

A second relevant difference is that while there was a delayed onset in *Blankenship,* in that case there was also expert medical testimony that explained how the delayed reaction could occur: The surgeon testified that pain from the accident could have led the plaintiff to avoid exercising the muscles around the knee, letting the muscles gradually atrophy to the point that the kneecap could slide out of its normal position. 984 S.W.2d at 776. In today's case, the jury did not hear a causal story that would explain the discontinuous progress of Hamburger's symptoms. I do not believe that the question of whether a car wreck could cause a herniated disc that does not manifest itself until weeks later is within "general experience and common sense" such that a layperson can "determine, with reasonable probability, the causal relationship between the event and the condition." *Morgan,* 675 S.W.2d at 733. I would hold that expert testimony is therefore necessary. That requirement can often be satisfied with a single question posed to a physician who is already testifying as a fact witness-as would have happened here, if Hamburger's surgeon had been properly designated under Federal Rule of Civil Procedure 26(a)(2)(A).

Since my application of the governing Texas principles

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

361 F.3d 875                                                                                                                    Page 15
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57 Fed.R.Serv.3d 1087
(Cite as: 361 F.3d 875)

would require expert testimony on this record, I respectfully
dissent to the extent that the majority holds otherwise. I con-
cur in the balance of the majority's judgment and opinion.

C.A.5 (Tex.),2004.
Hamburger v. State Farm Mut. Auto. Ins. Co.
361 F.3d 875, 63 Fed. R. Evid. Serv. 1108, 57
Fed.R.Serv.3d 1087

Briefs and Other Related Documents (Back to top)

• 2003 WL 23525960 (Appellate Brief) Post-Submission
Brief of Appellee State Farm Mutual Automobile Insurance
Company (Oct. 30, 2003) Original Image of this Document
(PDF)
• 2003 WL 23525961 (Appellate Brief) Post -Submission
Brief of Appellee State Farm Mutual Automobile Insurance
Company (Oct. 30, 2003) Original Image of this Document
(PDF)
• 2003 WL 23525962 (Appellate Brief) Reply Brief Filed on
Behalf of Mr. Perry Hamburger (Apr. 03, 2003) Original
Image of this Document (PDF)
• 2003 WL 23525959 (Appellate Brief) Brief of Appellee
State Farm Mutual Automobile Insurance Company (Mar.
19, 2003) Original Image of this Document (PDF)
• 2003 WL 23525963 (Appellate Brief) Brief of Appellee
State Farm Mutual Automobile Insurance Company (Mar.
19, 2003) Original Image of this Document (PDF)
• 2003 WL 23526014 (Appellate Brief) Original Brief Filed
on Behalf of Mr. Perry Hamburger (Feb. 12, 2003) Original
Image of this Document (PDF)
• 02-21126 (Docket) (Oct. 14, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.