**Westlaw.**

32 S.W.3d 745                                                                                                           Page 1
32 S.W.3d 745
**(Cite as: 32 S.W.3d 745)**

C

Court of Appeals of Texas,Beaumont.
Lance SLOAN, M.D., Appellant,
v.
Lisa MOLANDES, et al., Appellees.
**No. 09-99-396 CV.**

Submitted June 1, 2000.
Decided Nov. 30, 2000.

Patient who developed pancreatitis followed by critical illness neuropathy after being on high dose of steroids for long period of time brought medical malpractice suit against her primary doctor. The 159th District Court, Angelina County, Gerald A. Goodwin, J., entered judgment on jury verdict in favor of patient, and doctor appealed. The Court of Appeals, John Hill, J. (Assigned), held that: (1) jury finding that doctor's negligence in continuing patient on high dose of steroids for too long was a proximate cause of damages to patient was supported by sufficient evidence; (2) fact that patient's affidavit showed her medical expenses to be $107,543.25 did not mean that court had to award her the full amount, where jury found expenses to be $21,600; and (3) jury finding that patient was 49% negligent and that her actions were a proximate cause of her injuries was supported by sufficient evidence.

Affirmed.

West Headnotes

**[1] Appeal and Error 30 ⊙═930(1)**

30 Appeal and Error
30XVI Review
30XVI(G) Presumptions
30k930 Verdict
30k930(1) k. In General. Most Cited Cases

**Appeal and Error 30 ⊙═1001(3)**

30 Appeal and Error
30XVI Review
30XVI(I) Questions of Fact, Verdicts, and Findings
30XVI(I)2 Verdicts

30k1001 Sufficiency of Evidence in Support
30k1001(3) k. Total Failure of Proof. Most Cited Cases
In reviewing a no evidence or legal insufficiency issue, Court of Appeals must consider only the evidence and inferences, when viewed in their most favorable light, that tend to support jury's finding and disregard all evidence and inferences to the contrary, and Court of Appeals must uphold the finding if there is any evidence of probative force to support the finding.

**[2] Health 198H ⊙═823(13)**

198H Health
198HV Malpractice, Negligence, or Breach of Duty
198HV(G) Actions and Proceedings
198Hk815 Evidence
198Hk823 Weight and Sufficiency, Particular Cases
198Hk823(13) k. Pharmacological Services. Most Cited Cases
(Formerly 299k18.80(5) Physicians and Surgeons)
Jury finding that doctor's negligence in continuing patient on high dose of steroids for too long was a proximate cause of damages to patient was supported by evidence that patient told her doctor about side effects from the steroids but that doctor did not taper off the steroids, that patient sought second opinion of nephrologist who told her she needed to taper off the drugs immediately, that the next day she was admitted to hospital with acute necrotizing pancreatitis and that she contracted lower extremity neuropathy as a result, that experts testified that doctor violated standard of care by continuing steroid therapy which elevated patient's triglycerides and ultimately gave her pancreatitis, and which worsened her diabetes, triglyceride level, and blood cholesterol level.

**[3] Health 198H ⊙═631**

198H Health
198HV Malpractice, Negligence, or Breach of Duty
198HV(B) Duties and Liabilities in General
198Hk630 Proximate Cause
198Hk631 k. In General. Most Cited Cases
(Formerly 299k15(4) Physicians and Surgeons)
To establish proximate cause in medical malpractice case, plaintiff must prove: (1) foreseeability, that defendant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

32 S.W.3d 745
32 S.W.3d 745
(Cite as: 32 S.W.3d 745)

Page 2

should have anticipated the danger that resulted from his or her negligence; and (2) that defendant's negligence was a substantial factor in bringing about the injury and without which no harm would have occurred.

[4] Health 198H €➞631

198H Health
198HV Malpractice, Negligence, or Breach of Duty
198HV(B) Duties and Liabilities in General
198Hk630 Proximate Cause
198Hk631 k. In General. Most Cited Cases
   (Formerly 299k15(4) Physicians and Surgeons)
Patient bringing medical malpractice action was not required to establish that doctor's treatment was a more likely cause of her injuries or to rule out all other causes; rather, patient merely had burden to show that doctor's negligence was a substantial factor in causing her injuries.

[5] Evidence 157 €➞571(9)

157 Evidence
157XII Opinion Evidence
157XII(F) Effect of Opinion Evidence
157k569 Testimony of Experts
157k571 Nature of Subject
157k571(9) k. Cause and Effect. Most Cited Cases

Health 198H €➞823(13)

198H Health
198HV Malpractice, Negligence, or Breach of Duty
198HV(G) Actions and Proceedings
198Hk815 Evidence
198Hk823 Weight and Sufficiency, Particular Cases
198Hk823(13) k. Pharmacological Services. Most Cited Cases
   (Formerly 299k18.80(5) Physicians and Surgeons)
Jury conclusion in medical malpractice case that patient's development of critical illness neuropathy was foreseeable to doctor who prescribed high dose of steroids to patient, who then developed pancreatitis followed by critical illness neuropathy, was sufficiently supported by, inter alia, expert testimony that critical illness neuropathy is an injury to nerves that commonly follows a life-threatening illness, and

that it is common when high-dosage corticosteroids and other drugs are given.

[6] Appeal and Error 30 €➞989

30 Appeal and Error
30XVI Review
30XVI(I) Questions of Fact, Verdicts, and Findings
30XVI(I)1 In General
30k988 Extent of Review
30k989 k. In General. Most Cited Cases

Appeal and Error 30 €➞1003(6)

30 Appeal and Error
30XVI Review
30XVI(I) Questions of Fact, Verdicts, and Findings
30XVI(I)2 Verdicts
30k1003 Against Weight of Evidence
30k1003(6) k. Clear or Palpable Weight or Preponderance. Most Cited Cases
In reviewing factual insufficiency issue, Court of Appeals considers and weighs all of the evidence and will set aside the verdict only if evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.

[7] Damages 115 €➞191

115 Damages
115IX Evidence
115k183 Weight and Sufficiency
115k191 k. Expenses. Most Cited Cases
Mere compliance with statute providing that affidavit that indicates that amount charged for service was reasonable and that the service was necessary is sufficient to support fact finding that amount charged was reasonable or that service was necessary does not establish that amount of damages shown to be reasonable and necessary was caused by defendant's negligence and therefore does not establish the plaintiff's entitlement to those damages as a matter of law. V.T.C.A., Civil Practice & Remedies Code § 18.001.

[8] Health 198H €➞832

198H Health

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

32 S.W.3d 745                                                                          Page 3
32 S.W.3d 745
(Cite as: 32 S.W.3d 745)

198HV Malpractice, Negligence, or Breach of Duty
198HV(G) Actions and Proceedings
198Hk828 Damages
198Hk832 k. Amount. Most Cited Cases
    (Formerly 299k18.110 Physicians and Surgeons)
Fact that medical malpractice plaintiff presented affidavit
showing that full amount of her medical expenses was
$107,543.25 did not mean that court had to award her the
full amount, where jury found expenses to be $21,600.
V.T.C.A., Civil Practice & Remedies Code § 18.001.

[9] Evidence 157 ☞571(9)

157 Evidence
157XII Opinion Evidence
157XII(F) Effect of Opinion Evidence
157k569 Testimony of Experts
157k571 Nature of Subject
157k571(9) k. Cause and Effect. Most Cited Cases

Health 198H ☞823(13)

198H Health
198HV Malpractice, Negligence, or Breach of Duty
198HV(G) Actions and Proceedings
198Hk815 Evidence
198Hk823 Weight and Sufficiency, Particular Cases
198Hk823(13) k. Pharmacological Services. Most Cited
Cases
    (Formerly 299k18.80(5) Physicians and Surgeons)
Jury finding that patient, who brought medical malpractice
suit against her doctor after developing pancreatitis while
being treated with steroids, was 49% negligent and that pa-
tient's negligence was proximate cause of her injuries was
supported by evidence that patient's weight went up by more
than thirty pounds while she was on steroid therapy, and by
expert testimony that although steroids increase appetite, it
did not require that patient eat high-fat foods or stop exer-
cising and that if patient had followed doctor's instructions
to eat a low-fat diet, exercise, and lose weight, it would have
resulted in lowering her triglycerides, cholesterol, and
weight, all of which apparently contributed to patient's de-
velopment of pancreatitis.

*747 Elizabeth M. Fraley,Fraley & Fraley, Dallas, Kevin H.

Dubose, Richard P. Hogan, Jr., Hogan Dubose & Town-
send, L.L.P., Houston, for appellant.
Jon L. Anderson, Lufkin, for appellee.

Before BURGESS, STOVER and HILL, JJ.

    FN1. The Honorable John Hill, sitting by assign-
    ment pursuant to tex. Gov't Code Ann. § 74.003(b)
    (Vernon 1998).

OPINION
JOHN HILL, Justice (Assigned).
Lance Sloan, M.D. appeals from a judgment resulting from
a jury verdict in favor of his patient, Lisa Molandes, and the
other appellees in this medical malpractice case. In a single
issue, he contends that there is no evidence to support the
jury's finding that any negligence on his part was a proxim-
ate cause of any injury to Lisa Molandes. Appellees present
three cross-points in which they contend that: (1) the
amount of Molandes' past medical expenses was established
as a matter of law; (2) there is no evidence of negligence on
the part of Lisa Molandes; and (3) Dr. Sloan should be sanc-
tioned for presenting a frivolous appeal.

We affirm the trial court's ruling and find: (1) the evidence
is both legally and factually sufficient to support the jury's
finding that Dr. Sloan's negligence was a proximate cause of
injury to Molandes; (2) Molandes did not establish the
amount of her past medical expenses as a matter of law; (3)
the evidence supports the jury's finding that Molandes' neg-
ligence was a proximate cause of her injury; and (4) Dr.
Sloan's appeal is not a frivolous appeal.

[1] Dr. Sloan contends in a single issue that there is no evid-
ence, or, alternatively, factually insufficient evidence, to
support the jury's finding that his negligence was a proxim-
ate cause of damage to Lisa Molandes. In reviewing a "no
evidence" or legal insufficiency issue, we must consider
only the evidence and inferences, when viewed in their most
favorable light, that tend to support the jury's finding and
disregard all evidence and inferences to the contrary. See
Sherman v. First Nat'l Bank, 760 S.W.2d 240, 242
(Tex.1988). We must uphold the finding if there is any evid-
ence of probative force to support the finding. Id.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

32 S.W.3d 745                                                                                                      Page 4
32 S.W.3d 745
(Cite as: 32 S.W.3d 745)

**\*748** [2] Lisa Molandes testified that she saw Dr. Sloan in 1993 for gestational diabetes and that he later became her primary treating physician. She indicated that Dr. Sloan prescribed the steroid drug Prednisone for her for a condition called minimal change disease or focal segmental glumeruloscierosis. Molandes stated that she began experiencing various side effects, and that she expressed to Dr. Sloan her concern about them, but that he did not taper off the Prednisone. According to Lisa, she and her husband sought a second opinion, but could not get an appointment until March 20, 1996, when she saw Dr. Thomas Lowery, a Tyler nephrologist. She testified that Dr. Lowery told her that she needed to taper off Prednisone immediately. She stated that the next day her husband took her to the hospital emergency room with severe abdominal pains. According to Michael, her husband, Dr. Sloan admitted her for acute necrotizing pancreatitis. Michael said that Dr. Sloan told the family that she was dying. Lisa testified that after transferring to a Houston hospital, she left the hospital in a wheel chair and leg braces. Neither Dr. Sloan, nor Dr. Larry Melton, an expert called to testify by Dr. Sloan, indicated that Lisa's lower extremity neuropathy, a condition that she contracted as a result of her bout with pancreatitis, was likely to improve.

Dr. Peter Howard Jones, a physician practicing internal medicine and working in the area of atherosclerosis and lipid disorders, testified that Dr. Sloan violated the standard of care by continuing steroid therapy beyond December 1995. One reason for the doctor's opinion was the increase in Molandes' triglycerides. He said it was that elevation of triglycerides that ultimately gave her pancreatitis. He indicated that there is a known medical association between elevated triglycerides and pancreatitis, an inflammation of the pancreas. He indicated that in his opinion the continued use of steroids with its effects on glucose control in a woman with underlying genetic predisposition to hypertriglyceridemia contributed to a severe elevation in her triglycerides, which ultimately gave her pancreatitis. He indicated that Dr. Sloan did not check Molandes' triglycerides from the time he began steroid therapy, in June, 1995, to January 15, 1996.

Dr. Tom Petty, a physician board certified in internal medicine, testified that he believed Dr. Sloan was negligent in

not appreciating or responding to the side effects that came from his use of corticosteroids. He stated that by starting them and continuing them in spite of continued weight gain and the development of severe hyperlipidemia, he created serious steroid toxicity in Molandes. He indicated that the steroid Prednisone worsened her diabetes, worsened her triglyceride level, worsened her blood cholesterol level, and that the level of triglycerides, level of cholesterol, diabetes, and weight gain were all major reasons behind Molandes' development of pancreatitis. He stated that in his opinion the way Dr. Sloan used Prednisone with Molandes was a proximate cause of damages to Molandes. He stated that the damages from her total care, which included the high dose of corticosteroids for nearly nine months, resulted in hypertriglyceridemia, pancreatitis, acute respiratory distress syndrome, the development of a pancreatic pseudocyst, the subsequent development of relapsing pancreatitis, and the development of critical illness neuropathy.

We hold that the evidence is legally sufficient to support the jury's finding that Dr. Sloan's negligence was a proximate cause of damages to Molandes. We believe that, contrary to Dr. Sloan's assertions, a reasonable jury could have concluded from this evidence that Dr. Sloan continued Molandes on a high dose of steroids for too long a period and that was a proximate cause of her injuries.

[3][4] Dr. Sloan argues that the evidence is insufficient because the evidence did not establish that Dr. Sloan's treatment was the more likely cause of Molandes'**\*749** injury, nor did it rule out other possible causes. In a medical malpractice case, in order to establish proximate cause, a plaintiff must prove: (1) foreseeability, that the defendant should have anticipated the danger that resulted from his or her negligence; and (2) that the defendant's negligence was a substantial factor in bringing about the injury and without which no harm would have occurred. *See Bradley, et al. v. Rogers, et al., 879 S.W.2d 947, 953 (Tex.App.-Houston [14th Dist.] 1994, writ denied); Arlington Memorial Hospital Foundation, Inc. v. Baird, 991 S.W.2d 918, 922 (Tex.App.-Fort Worth 1999, writ denied).* Therefore, Molandes was not required to establish that Dr. Sloan's treatment was a more likely cause of Molandes' injuries or to rule out all other causes; rather, she merely had the bur-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

32 S.W.3d 745                                                                                                Page 5
32 S.W.3d 745
(Cite as: 32 S.W.3d 745)

den to show that Dr. Sloan's negligence was a substantial factor in causing her injuries. We believe she sustained that burden.

In arguing that Molandes was required to show that Dr. Sloan's negligence was the most likely cause or that she was required to rule out other causes, Dr. Sloan relies upon three medical malpractice cases, *Hart v. Van Zandt,* 399 S.W.2d 791, 792 (Tex.1965); *Lenger v. Physician's General Hospital, Inc.,* 455 S.W.2d 703, 707-08 (Tex.1970); and *Duff v. Yelin,* 751 S.W.2d 175 (Tex.1988). In *Duff,* the court upheld the granting of an instructed verdict in a medical malpractice case where the only evidence of proximate cause was a doctor's testimony as to two possible causes of the plaintiff's injury, and where the doctor refused to state that either of the events could have caused the injury within a reasonable medical probability. *Duff,* 751 S.W.2d at 176. In *Lenger,* the Texas Supreme Court based its holding that the evidence was insufficient to support a finding of causation upon the rule that expert testimony that an event is a possible cause of a condition cannot ordinarily be treated as evidence of reasonable medical probability except when, in the absence of other reasonable causal explanations, it becomes more likely than not that the condition did result from the event. *Lenger,* 455 S.W.2d at 707. The court noted that the testifying witness said nothing that could be taken as an indication that he regarded the particular cause urged by the plaintiff as the more likely of the several possible causes. *Id.* We find both of these cases distinguishable because in both of those cases there was no expert testimony that the cause relied upon by plaintiff was, in reasonable medical probability, a cause of the plaintiff's injuries. In this case, as previously noted, there is such testimony. In *Hart,* the Supreme Court held:
[T]hat proof of causation must be beyond a showing of a possibility that the injuries arose from the defendant's negligence or lack of skill, since the jury will not be permitted to speculate as to the cause of the injury. Thus where the evidence most favorably [sic] to the plaintiff develops more than one equally probable cause, for one or more of which defendant is not responsible, the plaintiff has failed to sustain his burden of proof.

*Hart,* 399 S.W.2d at 792-93 (citing 13 A.L.R.2d 22). The

court went on to say, however, that expert testimony showing that the defendant's actions would, in reasonable medical probability, cause damage such as that suffered by the plaintiff was sufficient to support a submission of the issue of probable cause to the jury. *Id. at 796.* We do not interpret this case or either of the other cases cited by Dr. Sloan to support the concept that expert testimony based upon reasonable medical probability to the effect that the doctor's negligence caused the plaintiff's injuries is insufficient evidence to support a jury finding of proximate cause merely because the evidence also reflects that there are other things that possibly could have caused those injuries. *See Bender v. Dingwerth,* 425 F.2d 378, 381-82 (5th Cir.1970).

**\*750** [5] Dr. Sloan urges that the evidence is insufficient to show that Molandes' development of critical illness neuropathy was foreseeable. However, Dr. Petty testified that critical illness neuropathy is an injury to nerves that commonly follows a life-threatening illness, and that it is common when high-dosage corticosteroids and other drugs are given. Because the condition is common in a situation such as was present in this case, we believe that it would be reasonable to conclude that Molandes' development of that condition was foreseeable.

[6] In reviewing a factual insufficiency issue, we consider and weigh all of the evidence and set aside the verdict only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Both Dr. Petty and Dr. Jones indicated that Dr. Sloan's starting Molandes on steroids was within the standard of care, while Dr. Jones testified that Dr. Sloan's use of steroids from June, 1995, to January, 1996, was within the standard of care. Dr. Sloan argues that Dr. Petty stated that the continued use of steroids did not violate the standard of care until January, but Dr. Petty's testimony was that in his opinion Dr. Sloan breached the standard of care by keeping Molandes on steroids from June 1995 through January 1996. Dr. Sloan testified that in December, 1995, or January, 1996, he gave Molandes the option of tapering off Prednisone, but that she declined to do so until she received a second opinion. According to Dr. Sloan, she preferred to make her own

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

32 S.W.3d 745                                                                                              Page 6
32 S.W.3d 745
(Cite as: 32 S.W.3d 745)

appointment. Dr. Sloan said that he did not feel that staying on the Prednisone a little longer would be of any harm to her, so he went along with what Molandes wished to do. As previously noted, Molandes testified that Dr. Sloan did not taper off the Prednisone, despite her complaints to him about the side effects.

Dr. Jones did not answer a question as to what harm was caused by the one-month delay in tapering Molandes' Prednisone, saying that there was no measurement of her triglycerides at that point. Dr. Sloan suggests that Dr. Jones admitted that no other harm resulted from continuing the steroid therapy during the month from January to February, 1996. Actually, Dr. Jones was asked if there were any other problems in that month that he could attribute to Dr. Sloan's keeping her on steroids during that period. He replied, "No, other than keeping the triglycerides very high certainly keeps her at ... a risk of developing pancreatitis at any time." Dr. Jones did acknowledge that Molandes did not develop pancreatitis during that month.

Dr. Jones, in his medical records, listed multiple factors that he indicated probably caused Molandes' condition: (1) Hypertriglyceridemia per se, uncontrolled; (2) Accutane treatment that increased triglycerides; (3) Glucose, uncontrolled; (4) Possibly uncontrolled hypothyroidism; (5) Nephritic syndrome which increases both triglycerides and LDL; and (6) Steroids increases glucose and increases triglycerides.

Dr. Petty also indicated that Molandes' pancreatitis was caused by multiple factors. He testified that triglycerides, diabetes, cholesterol, and weight gain were all major reasons behind her development of pancreatitis. He indicated that in his opinion the Prednisone worsened Molandes' diabetes, worsened her triglycerides, and worsened her cholesterol. He acknowledged that Molandes, prior to any treatment by Dr. Sloan, was a diabetic, was obese, was hypertensive, had Type V hyperlipidemia, and had some features of the nephritic syndrome. He stated that it is not possible, with any accuracy, to assign an amount that each of the factors played in worsening Molandes' triglycerides. He indicated that while pancreatitis usually has an identifiable cause, it can occur just out of the blue. He estimated *751 that close to 50% of cases occur naturally. He acknowledged that there was no scientific way to rule out or

provide a cause that is twice as likely a cause as any other. He specifically testified that he could not rule out Molandes' nephritic syndrome, Accutane, or Bactrim as a contributing cause of Molandes' condition.

Dr. Antonio Gotto testified that in Dr. Jones' medical records, a double arrow by Accutane, as opposed to a single arrow by steroids, indicated that he considered Accutane to be a stronger cause than steroids.

Dr. Sloan testified that he had never seen anyone continue to have symptoms of critical illness neuropathy for more than a few months, and that literature he had read indicated that in almost all cases the condition resolves within a year.

Dr. Mario Rubin, a board-certified nephrologist, testified that critical illness neuropathy is rare as to him, but that a question as to whether it was a relatively rare occurrence should be answered by a neurologist. He said that although he sees from ten to twelve patients daily in an intensive care unit of a hospital, only two of his patients ever had the disease. He expressed his opinion that critical illness neuropathy was not a foreseeable result of Dr. Sloan's treatment of Molandes with steroids for the dosage and duration that he prescribed.

Dr. Jones indicated that Molandes had not yet developed pancreatitis on March 11, 1996, the day she received a prescription for Bactrim, a sulfa drug. He noted that this date was within ten days of the day she developed pancreatitis. While acknowledging that sulfonamide drugs, or sulfa drugs, are more associated with a direct effect on pancreatitis than corticosteroids, so that the Bactrim could not be eliminated as a possible cause of Molandes' condition, he expressed his opinion that the Bactrim was not a likely cause of her pancreatitis because it has a much rarer association with the disease than hypertriglyceridemia. He said that there was nothing in any of his medical records indicating that steroids, more than any other factor, caused Molandes' pancreatitis. He expressed his opinion that steroids did not, more than any other factor, cause her pancreatitis.

Dr. Petty testified that he was aware that sulfa drugs, such as Bactrim, are believed to have a pretty direct association with pancreatitis. He agreed that a textbook to which he had

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

32 S.W.3d 745                                                                                             Page 7
32 S.W.3d 745
(Cite as: 32 S.W.3d 745)

earlier referred states that there is a definite association between sulfa drugs and pancreatitis, but only a probable association between steroids and pancreatitis. He stated that while that might be true in the general population, it was probably not correct in an individual. He also testified that if Molandes were taking sulfa drugs in a time temporally close to her developing acute pancreatitis, he could not exclude them as a cause.

Molandes acknowledged that she had problems with her thyroid prior to seeing Dr. Sloan, but she was unsure if it was hypothyroid or hyperthyroid. The evidence showed that a dermatologist prescribed Accutane and Bactrim for Molandes after she started taking the steroids that Dr. Sloan prescribed.

We hold that the evidence is factually sufficient because we do not find the evidence so weak or so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. We overrule Dr. Sloan's sole issue on appeal.

[7][8] Molandes presents three cross-points on appeal. In her first cross-point, she contends that the trial court erred by not awarding her the full amount of the medical expenses that she proved by affidavit in accordance with tex. Civ. Prac. & Rem.Code Ann. § 18.001, because she established those expenses as a matter of law. Her affidavit of medical expenses showed expenses in the amount of $107,543.25, while the jury found expenses in the amount of $21,600.

*752 Section 18.001 of the Texas Civil Practice and Remedies Code provides that an affidavit indicating that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by a judge or jury that the amount charged was reasonable or that the service was necessary. If no controverting affidavit is filed, the other party may not controvert the claim. Compliance with the statute does not establish that the amount of the damages shown to be reasonable and necessary was caused by the defendant's negligence and therefore does not establish the plaintiff's entitlement to those damages as a matter of law. *See Beauchamp v. Hambrick, 901 S.W.2d 747, 749 (Tex.App.-Eastland 1995, no*

writ). Molandes principally relies upon the case of *Castillo v. American Garment Finishers Corporation, 965 S.W.2d 646 (Tex.App.-El Paso 1998, no writ).* This case merely holds that a non-expert witness may not be used at trial to establish the reasonableness and necessity of medical expenses simply because such a non-expert may establish the reasonableness and necessity of such expenses by affidavit in accordance with the provisions of tex. Civ. Prac. & Rem.Code. *Castillo, 965 S.W.2d at 654.* It does not hold that filing such an affidavit that is uncontroverted establishes that one is entitled to be awarded that amount of damages as a matter of law. We overrule Molandes' cross-point one.

[9] In her second cross-point, Molandes contends that there is no evidence to support the jury's finding that she was 49% negligent. Lisa Molandes testified that while she was on steroid therapy her weight was going up. Doctor Peter Jones indicated that lifestyle changes play a role in glucose control and may play a role in elevating triglycerides in people who have a propensity for that genetically. He indicated that if Molandes were not following her diabetic diet and, instead, eating a high-fat diet it would worsen her diabetes control, her triglycerides, and her cholesterol. He said that a patient who follows his or her diet and gets exercise can have a very significant positive effect on cholesterol, weight, and triglyceride levels. He indicated that although steroids increase appetite, that does not require that the patient eat high-fat foods or stop exercising. He suggested that if Molandes had followed Dr. Sloan's instructions to eat a low-fat diet, exercise, and lose weight, it would have resulted in lowering her triglycerides, her cholesterol, an improvement in her obesity, and an overall improvement in her medical condition. According to Dr. Jones, if Molandes had walked 30 minutes per day in her neighborhood and had followed her prescribed diet, she would have shown measurable improvements in diabetes control, triglyceride control, obesity, and hypertension.

Dr. Tom Petty testified that high triglyceride levels, diabetes, high cholesterol levels, and weight gain were all major reasons behind Molandes' development of pancreatitis. He mentioned that she gained more weight while off the steroids than she did while on steroids, gaining 34 1/2

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

32 S.W.3d 745                                                                                                    Page 8
32 S.W.3d 745
(Cite as: 32 S.W.3d 745)

pounds from September 1994 until starting steroids and gaining 31 pounds in the nine months while she was on steroids. He said that it would have been better if she had adhered to a diet and exercise and could have lost weight. He said he was not aware of any other physical limitation than her obesity that would have kept her from exercising. He said he was not aware of any physical limitation that would have kept her from eating low-fat foods. He said that diet can be effective in reducing triglyceride levels and cholesterol levels, and that diet and exercise together can be effective in lessening the effects of diabetes. He expressed an opinion that diet and exercise could have reduced to some degree the extent to which Molandes suffered the side effects of Prednisone.

Dr. Antonio Gotto testified that a diet with fat restrictions can reduce triglyceride levels, even while a person is on high *753 doses of steroids. He indicated that it is possible through diet to control the effects of steroids on weight gain and on glucose levels. He said that he thought that it is a reasonable assumption that Molandes' weight gain reflected what her diet was.

We hold that the evidence is sufficient to support the jury's finding that Molandes' negligence was a proximate cause of her injuries. Molandes characterizes testimony by Dr. Sloan that he was not telling the jury that her problems were Molandes' fault as a judicial admission. We believe that Dr. Sloan's testimony could be reasonably interpreted as not expressing an opinion one way or the other as to whether Molandes was negligent, not an expression of his opinion that she was not negligent. Consequently, his testimony was not a judicial admission. We overrule cross-point two.

In her third cross-point, Molandes contends that we should sanction Dr. Sloan for presenting us with a frivolous appeal. Because we find that this appeal is not frivolous, we overrule cross-point three.

The judgment is AFFIRMED.

Tex.App.-Beaumont,2000.
Sloan v. Molandes
32 S.W.3d 745

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.