United States District Court
Southern District of Texas
FILED

OCT - 3 2006

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROGELIO RODRIGUEZ AND<br>ELIZABETH RODRIGUEZ | §<br>§<br>§ | |
| V. | § | CIVIL ACTION NO. B-04-137 |
| JAMES ARTHUR LARSON | §<br>§ | |

**DEFENDANT LARSON'S REPLY TO THE RESPONSE TO THE
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND
ALTERNATIVE MOTION FOR NEW TRIAL WITH SUPPORTING BRIEF**

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COMES James A. Larson, Defendant in the above styled and numbered cause, for the purpose of submitting his Reply to the Plaintiffs' Response to Defendant's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for New Trial with Supporting Brief, and would respectfully show:

### A.
### STANDARD OF REVIEW

In reviewing a motion for judgment as a matter of law, the court must consider all of the evidence in the record, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S.133, 150-51, 120 S. Ct. 2097, 2110 (2000), and although the court should draw all reasonable inferences in favor of the non-movant, the court may not disregard undisputed evidence from a disinterested witness that is favorable to the movant. *Id.* Moreover,

> [t]here must be a conflict in substantial evidence to create a jury question. Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. Consequently, a mere scintilla of evidence is insufficient to present a question for the jury. Even if the evidence is more than a scintilla, *Boeing* assumes that some evidence may exist to support a

position which is yet so overwhelmed by contrary proof as to yield to a [motion for judgment as a matter of law].

*Gaia Technologies Inc. v. Recycled Products Corp.*, 175 F.3d 365, 374-75 (5th Cir. 1999).

On the other hand, in reviewing a motion for new trial "[t]he standard used by the district court . . . is lower than that for granting judgment as a matter of law because

> [a] verdict can be against the "great weight of the evidence," and thus justify a new trial, even if there is substantial evidence to support it. Additionally, "[t]he trial court in passing on a motion for new trial need not take the view of the evidence most favorable to the verdict winner, [as is required in passing on motions for judgment as a matter of law], but may weigh the evidence."

*Whitehead v. Four Max of Miss., Inc.*, 163 F.3d 265, 269-70 n.2 (5th Cir. 1998). In weighing the evidence, "[i]f the trial judge is not satisfied with the verdict of a jury, he has the right - and indeed the duty - to set the verdict aside and order a new trial." *Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 670 (5th Cir. 2002) (affirming magistrate judge's grant of a new trial because verdict was against the great weight of the evidence).

### B.
### MOST OF THE DAMAGES AWARDED ASSUME FUTURE SURGERY AND A FUNCTIONAL CAPACITY EVALUATION THAT HAS NEVER BEEN PERFORMED

In response to Jury Instruction No. 3, the jury awarded the following future damages to Rogelio Rodriguez:

| | |
|---|---|
| Physical pain and mental anguish | $25,000 |
| Loss of earning capacity | $200,000 |
| Physical impairment | $30,000 |
| Medical expenses | $109,000 |

A careful review of Dr. Gill's testimony shows that these awards, particularly the loss of earning capacity and medical expenses, are linked to his belief that future surgery will be required. Moreover, a careful review of Dr. Tijmes's testimony shows that the award for loss of earning capacity necessarily assumes a functional capacity evaluation that has never been performed.

With respect to medical expenses, Dr. Gill testified that the total cost for future medical care will be $109,000. Ex. B, pg. 59. Of that amount, surgeries account for $90,400. PX9. Accordingly, if the evidence of the need for future surgery is insufficient, which it is, at least $90,400 needs to be taken out of the judgment.

With respect to loss of earning capacity, the court will recall that DX-4 contains a certification from Dr. Cano dated April 22, 2003. In it, Dr. Cano certified that Mr. Rodriguez had a zero impairment rating and was *released to return to regular work* in February 2003. This was the only impairment rating in evidence. According to Dr. Tjimes, it means that under the guidelines of the American Medical Association, Plaintiff has no physical impairment whatsoever. Ex. A, pg. 49.

With this in mind, the court needs to carefully consider Dr. Gill's testimony. Specifically, he testified that whether Plaintiff can continue as a truck driver "can be better determined *after* he has had his surgical procedure." Ex. B, pg. 52. *See also id.* (*after* a disc surgery with fusion, Plaintiff will not be able to do certain things such as heavy lifting); *id.* at 53("*anytime you have lower back injury and procedure done*, there are lot of . . . work related activities they're not going to be able to do"). This testimony makes any award of loss of earning capacity in the future premature.

As for Dr. Gill's conclusory statement that he presently believes that at some indeterminate time Plaintiff is not going to be able to handle the work that he is performing, *id.* at 55, it is simply too vague and speculative to rise to the level of "some evidence." For instance, there is no

explanation in the record from Dr. Gill of *when* Plaintiff will allegedly become incapable of doing his job; *how incapable* he will be (totally or partially, and if the latter, how partial); *what* type of work he will still be able to perform; or anything other explanation.

Moreover, it was the undisputed testimony of Dr. Tijmes that Plaintiff will require a functional capacity evaluation before his capacity for work can be estimated, yet there is no evidence in the record of any such evaluation. Ex. A, pg. 23. As he explained specifically in response to the question of whether Plaintiff will be able to do the work of a truck driver:

> We don't know what the future will bear on these pain producing elements like disc protrusions of the cervical or lumbar spine. The body changes in time and it is very difficult to predict what type of problems he might expect. If the pain . . . does not decrease or improve I would dare say a functional capacity evaluation will give us a much better view of what he can do or cannot do.

*Id.* at 24.

Finally, Dr. Gill's vaguely expressed belief, as speculative and conclusory as it is, is overwhelmed by contrary proof, specifically Dr. Cano's zero impairment rating and release for the Plaintiff to return to work with no limitations.

Given the preponderance of the evidence, it is clear that the jury's substantial award of damages for loss of earning capacity in the future is premised upon plaintiff requiring surgery.

In their response, Plaintiffs assert that "[e]ven if the experts testimony did not provide evidence that an operation was needed, there was still other evidence available to support the award of [future] damages." In this regard, they seek to rely on evidence allegedly showing that "there would be future problems whichever way the plaintiff chose to go," referring to whether or not he is required to have surgery.

To begin, even if there is some evidence Plaintiff will suffer "future problems" regardless of surgery, such evidence certainly does not warrant an award of $109,000 in future medical expenses, *$90,400 of which is for surgery*. Simply put, without the need for surgery the $90,400 goes out the window.

As to the loss of earning capacity, again: whatever "evidence" there is, it is simply too indeterminate to allow the jury to do anything more than speculate in arriving at the sum of $200,000.

### C.
### THERE IS NO "SUBSTANTIAL EVIDENCE" THAT SURGERY IS REQUIRED

Dr. Gill is the one who referred Plaintiff to Dr. Tijmes. Ex. A, pg. 7. Dr. Tijmes is an orthopaedic surgeon. Dr. Tijmes refused to rule in Plaintiff as a candidate for surgery. *Id.* at 57.

Dr. Gill expressly deferred to an orthopaedic surgeon such as Dr. Tijmes. His express deference to more qualified doctors in determining whether Plaintiff will probably need surgery is "undisputed evidence from a disinterested witness" which the court may not disregard. Without explaining why, however, Plaintiffs now assert that even though a qualified orthopaedic or neurosurgeon surgeon "would have to make the final call on surgery," which is exactly the reason Dr. Gill expressly deferred to such doctors, Dr. Gill's belief that surgery will be required is nevertheless "some evidence" of the need for surgery. That is just plain wrong. Dr. Gill's testimony, which clearly and undisputedly defers to others more qualified, none of whom have said Plaintiff is a candidate for surgery, is nothing more than a mere scintilla, which is treated as no evidence. Moreover, even if the testimony was "some evidence," it "is yet so overwhelmed by contrary proof as to yield to a [motion for judgment as a matter of law]." *Gaia Technologies,* 175 F.3d at 374-75.

Finally, most of what has been said up to this point has largely concerned whether Plaintiff will require lumbar surgery, which accounts for roughly half of the $90,400 that allegedly will be required for future surgery. The other half concerns cervical surgery, and there is even less "evidence" of the need for cervical surgery than there is of the need for lumbar surgery.

## D.
## PLAINTIFFS' MISUSE OF THE MAXIMUM RECOVERY RULE IS IMPROPER

In arguing that the court should deny the motion for new trial, Plaintiffs ask the court to consider, without any support in the record, a "factually similar case" in Willacy County in which the jury supposedly "returned a verdict similar in amounts to the damages awarded in the present case." They further state, again without any support in the record, that "there are any number of other factually similar cases that have been tried in this jurisdiction that have resulted in awards that are not disproportionate to the award in the present case." This argument is blatantly improperly because it seeks to rely upon unreported decisions that apparently were never appealed or reviewed by any court. *Lebron v. U.S.*, 279 F.3d 321, 326-27 (5th Cir. 2002) (in applying the maximum recovery rule, it is improper to rely upon cases that have not been officially reported). Moreover, the description of the so-called "factually similar" cases is so vague it is impossible for Defendant to even respond on the merits, let alone for the court to make a reasoned determination.

## PRAYER

PREMISES CONSIDERED, Defendant asks the Court to render judgment as a matter of law in favor of Defendant on the issue of future damages awarded by the jury in response to Jury Instruction 3, or to order a new trial, or to suggest a remittitur and if the Plaintiffs refuse to remit, then to order a new trial.

Respectfully submitted,

DUNN, WEATHERED, COFFEY, RIVERA,
KASPERITIS & RODRIGUEZ, P.C.
611 South Upper Broadway
Corpus Christi, Texas 78401
(361) 883-1594 [FAX 883-1599]

BY _____
Patrick R. Kasperitis
SBN 11105270; FED ID 12594
Frank Weathered
SBN 20998600; FED ID 2441

COUNSEL FOR DEFENDANT
JAMES ARTHUR LARSON

## CERTIFICATE OF SERVICE

This is to certify that on the 2nd day of October 2006, this document was served on counsel of record as indicated below pursuant to Federal Rules of Civil Procedure.

_____
Patrick R. Kasperitis

**VIA CM/RRR 7006 0100 0003 8216 0967**
Mr. Randall P. Crane
LAW FIRM OF RANDALL P. CRANE
201 S. Sam Houston
San Benito, Texas 78586